## Richmond

ELOISE RANDOLPH TRAYLOR AND HARRY E. TRAYLOR, JR., TRUSTEES
v. BENJAMIN D. HOLLOWAY AND JOAN B. HOLLOWAY.

June 14, 1965.

Record No. 5962.

Present, All the Justices.

*John W. Pearsall (Richard H. C. Taylor; Simpkins, McCaul & Pearsall,* on brief), for the appellants.

*Alexander H. Slaughter (John S. Battle, Jr.; Battle, Neal, Harris, Minor & Williams,* on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Eloise Randolph Traylor and Harry E. Traylor, Jr., Trustees, referred to herein as complainants, filed their bill for injunction against Benjamin D. Holloway and Joan B. Holloway, defendants, to require them to remove from their premises a building which the

complainants alleged violated a restrictive covenant in defendants' deed. The court below refused the injunction, dismissed the bill and the complainants have appealed.

The suit was heard on the bill, the answer of defendants, a stipulation of facts and issues, and the testimony of one witness heard *ore tenus* by the court, all of which presented the following case:

The complainants are trustees in a deed of trust by which there was conveyed to them a tract of 147.246 acres of land in Chesterfield county for the purposes set out therein, which include authority to subdivide the property into residential lots subject to such restrictions as they deemed advisable. Pursuant thereto the complainants proceeded to divide part of the tract into a subdivision called Traylor Estates, as shown on a map which was duly recorded; and by a declaration of restrictions duly executed and recorded on April 4, 1958, the lots in Section A of the subdivision were made subject to certain restrictions, designed to create a select residential area. Paragraphs 1 and 2 of said restrictions are set out in the margin.* Similar restrictive covenants have been placed on all of the other sections of Traylor Estates.

By deed dated March 16, 1959, duly recorded, the complainants conveyed Lot 4, Block C, Section A, to the defendants Holloway, who are husband and wife. The deed was expressly made "subject to the restrictive covenants and conditions of 'Traylor Estates Section A,' " as stated above.

According to the stipulation of facts and issues, "without any submission to the architectural committee, the defendants constructed on their lot a structure 12' x 12', of which approximately 8' x 12' is enclosed, which structure is used as a playhouse for the children of the defendants and their friends;" and the issue for decision is whether complainants have proved that the structure is a

---

* 1. No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than two cars.

2. No building shall be erected, placed, or altered on any lot until the construction plans and specifications thereof and a plan showing the location thereof shall have been approved by the architectural committee hereinafter established as to quality and types of materials, harmony of external design with existing structures, and location with respect to topography and finish grade elevation. No fence or wall not constituting part of a building shall be erected, placed, or altered on any lot nearer to any street than the minimum building setback line unless similarly approved. The approval aforesaid shall be as provided in paragraphs 9 and 10.

"building" within the meaning of the restrictions, and whether the restrictions should be so construed as to require the removal of the structure.**

The stipulation also contains the statement that the subdivision "has been developed into a fine residential section."

The only witness to testify was O. L. Hopkins, a real estate broker who developed the Traylor Estates and is agent for the sale of the lots. He testified as to his efforts to make this a high-class subdivision; that he drew up the restrictions with that in view and after careful study, and that he explained to each purchaser of a lot as to the restrictions and what they required. Pictures showing the kind and quality of the homes that had been built on the lots in Section A were introduced. Defendants' counsel conceded that the subdivision "is very high quality." Hopkins described the structure on the Holloway lot as "just a small building with a little overhanging porch in front of it." Pictures were presented showing the front, sides and rear of th structure. Hopkins testified that he had received objections to this particular house on this lot.

The court below was of opinion, as stated in its decree, "that a reasonable and proper interpretation of the restrictive covenants here involved does not prohibit the erection and maintenance of the subject playhouse upon the rear lot of the defendants."

From the evidence and the pictures it is quite clear that this structure is a building. It has four walls and a front porch, all under one roof. The entire structure, including the porch, is 12 feet by 12 feet. The four walls enclose a space 12 feet by 8 feet and the open porch extends four feet beyond the enclosed portion.

Defendants do not assert that the structure is not a building. They argue that it is not a building "within the meaning of the restrictive covenants," and that the meaning of the covenants should be determined by what the parties intended when they agreed that no building should be erected, and by "the evil sought to be avoided."

The parties are agreed that covenants restricting the free use of land are not favored and must be strictly construed. The burden is on the person who seeks to enforce such covenants to establish that the thing objected to is within their terms. *Schwarzschild* v. *Welborne*, 186 Va. 1052, 1058, 45 S.E.2d 152, 155; *Jernigan* v.

** The stipulation also included as an issue whether complainants have standing to maintain this suit. It is plain from the record that they do have, and no contention otherwise is made in defendants' brief,

*Capps,* 187 Va. 73, 78, 45 S.E.2d 886, 889. But in the latter case we said:

"It is an elementary rule of construction that the purpose or intent of a written instrument must be determined from the language used in the light of the circumstances under which it was written. * *" 187 Va. at 79, 45 S.E.2d at 889.

According to the evidence in the present case the circumstances were that the complainants proposed to make of the property a high-class subdivision where attractive homes would be built and attractive grounds maintained. To secure this result restrictions were prepared and made applicable to all lots, placed on record, referred to in each deed, and explained to each purchaser. These covenants included the provision that

"* * No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single-family dwelling not to exceed two stories in height and a private garage for not more than two cars."

They included the further provision that no building should be erected, placed, or altered on any lot until the construction plans and specifications and its location were approved by the architectural committee.

There is no ambiguity in these restrictions. They are stated in plain words. They were made to apply to all the lots, and the uncontradicted evidence is that what they were and what they required were explained to every person who purchased a lot. While the fact that the structure on this lot is used as a children's playhouse makes it desirable to the defendants, it does not create an exception to the terms of the restrictions. The restrictions made part of the defendants' deed apply to the type of the structure. They make no exception in favor of the use made of it. If the restrictions are to be construed as permitting structures other than those specified, because they are desirable, the result could readily be to nullify the restrictions and to make a contract different from the one made by the parties. As suggested in *University Gardens Property Owners Assn.* v. *Solomon,* 88 N.Y.S.2d 789, "* * There is a danger in disregarding the violation of such agreements; the first departure from such agreement is usually of a minor character but by gradual small infringements a substantial impairment or destruction of the whole scheme may gradually result."

This observation in *Whitehurst* v. *Burgess,* 130 Va. 572, 578, 107 S.E. 630, 632, is relevant:

" 'All courts profess to give effect to the plain intention of the parties, in imposing such restrictions, and should live up to their profession in good faith instead of seeking ingenious subtleties of interpretation by which to evade such restrictions.' *Sanders* v. *Dixon*, 114 Mo. App. 229, 253, 89 S.W. 577, 584." And see *Renn* v. *Whitehurst*, 181 Va. 360, 365, 25 S.E.2d 276, 278.

"* * It is well settled that where the grantor has clearly restricted the use of the land granted, and the restriction itself is not illegal, the covenant creates a trust which, in a proper case, courts of equity will enforce by means of an injunction against an inconsistent use. * *" *Virginian Ry. Co.* v. *Avis*, 124 Va. 711, 718, 98 S.E. 638, 640. *Springer* v. *Gaddy*, 172 Va. 533, 541, 2 S.E.2d 355, 358.

*Spilling* v. *Hutcheson*, 111 Va. 179, 68 S.E. 250, involved an application for an injunction to require the removal of a part of a building which encroached on a restriction in the defendant's deed. The defendant urged that the enforcement of the restriction inflicted an unnecessary hardship and that the plaintiff should be left to an action at law for damages. But this court said the correct rule in such case was stated in *Doherty* v. *Allman*, 3 H. L. App. Cas. 720, as follows:

" "* * If parties, for valuable consideration, with their eyes open, contract that a particular thing shall not be done, all that a court of equity has to do is to say by way of injunction that which the parties have already said by way of covenant, that the thing shall not be done, and in such case the injunction does nothing more than give the sanction of the process of the court to that which already is the contract between the parties. It is not, then, a question of convenience or inconvenience, or of the amount of damage or injury—it is the specific performance, by the court, of that negative bargain which the parties have made, with their eyes open, between themselves.' " 111 Va. at 182, 68 S.E. at 251.

We hold that the structure complained of violates Paragraphs 1 and 2 of the restrictions set out above, and that the complainants are entitled to have the structure removed.

The complainants also complain of the rejection by the court of evidence offered by them of other instances in which other structures similar to the one here in question had been objected to and consequently removed; and of written statements signed by a number of persons requesting that this structure be removed. Complainants argue that this evidence was admissible to show the general understanding as to the restrictive covenants and also as verbal acts. In

view of the disposition we make of the case, this question is not material.

The decree appealed from is accordingly reversed and the cause is remanded to the Circuit Court with direction to issue a mandatory injunction requiring the defendants to remove the structure from their lot.

*· Reversed and remanded.*