219 Va. 321. (1978)
VILLAGE GATE HOMEOWNERS ASSOCIATION
v.
CAROLE NIXON HALES
Record No. 770510.
Supreme Court of Virginia.
August 31, 1978.
John P. Milligan, Jr. (Smiley, Lear & Milligan, on brief) for appellant.
Denis D. McKenna (Dennis D. Duffy; Duffy & Brooks, on brief) for appellee.
Present: All the Justices.
Association has not waived restrictive covenant against front walls by approving side fences harmonizing with plan of development; association not estopped from disapproving harmonizing front walls by approving harmonizing side fences.
The owner of a row townhouse built a low brick wall around her front yard compatible in color and texture with the exterior of the house. During construction, the owner was notified by a representative of the plaintiff Association that the wall violated a restrictive covenant against front or side yard fences or walls and, after completion of the wall, demanded that it be removed. The owner refused and made a written request to the Association for approval of the wall. This request was formally denied after the Association instituted this suit. The Trial Court held that since the Association had waived the covenant as to side fences it had waived the provision as to harmonizing front walls in the same covenant and that it would be inequitable to enforce the covenant against any person within its common design or purpose.
1. The right to enforce a restrictive covenant of the type here involved may be lost by waiver, abandonment or acquiesence in violations but the party relying on a waiver must show that the previous conduct or violations had affected the architectural scheme and general landscaping of the area so as to render the restriction of no substantial value to the property owners.
2. Defendant has failed to show that no substantial value remains in the restriction, the attractiveness of the neighborhood not being affected adversely by the approved side fences which harmonized with the area and there thus being no waiver of the right to disapprove non-harmonizing side fences. There being no waiver of the right to disapprove non-harmonizing side fences, there is no waiver of the right to disapprove front walls or fences.
3. Plaintiff is not estopped from disapproving harmonizing front walls because it has approved harmonizing side fences, plaintiff acting properly to preserve the general plan and architectural scheme in accordance with the purpose of the covenants. To permit a front wall when these were never contemplated in the scheme of development would be to nullify the restrictions and make a contract different from the one made by the parties.
Appeal from a decree of the Circuit Court of Prince William County. Hon. Percy Thornton, Jr., judge presiding.
Reversed and remanded.
COMPTON
COMPTON, J., delivered the opinion of the Court.
We decide in this chancery proceeding whether there has been a waiver of the right to enforce a restrictive covenant affecting real property.
Appellant Village Gate Homeowners Association, a corporation charged with the duty to enforce the covenants, conditions and restrictions in Village Gate, a residential subdivision in Prince William County, brought this suit in equity against appellee Carole Nixon Hales, a fee-simple owner of a row townhouse in the development. Plaintiff sought to have an order entered requiring that defendant remove a front-yard wall or fence which had been constructed at her direction on her property. After hearing the evidence ore tenus, the chancellor denied the prayer of the bill of complaint and we awarded plaintiff an appeal to the December 1976 final decree which dismissed the bill.
The facts are undisputed. In 1973, defendant acquired title to the property in question. The conveyance was subject to duly recorded restrictive covenants applicable to all the property in the subdivision. The following covenant is pertinent to this controversy:
"ARTICLE VI."
"ARCHITECTURAL CONTROL"

* * *
 "No front or side yard fence, wall or walls, or other similar type structures shall be allowed except those constructed by or on behalf of [the developer]."
During May and June of 1975, apparently in an effort to correct drainage problems, defendant erected a low, solid, brick wall, entirely on her property, enclosing her small front yard, at a cost of $960.00. The evidence showed the wall was an attractive, wellbuilt structure which was compatible in color and texture with the exterior of her townhouse. Its height at the front walk was 30 inches with an iron gate at the sidewalk entrance.
The work began on May 20. During construction, according to the record, defendant was notified by a representative of the plaintiff Association that such a wall violated the foregoing covenant. The work was completed on June 14. During the following month, plaintiff, through counsel, demanded that the wall be removed. Defendant refused. During July she made a written request of the Association for approval of the structure. The request was formally denied by plaintiff in September of 1975, after this suit had been filed in August.
The evidence also showed that two other property owners in the subdivision had "at one time," erected front yard fences, consisting of one-foot high wooden posts with rope strung through each post, but that they had been removed at the plaintiff's request. At the time of trial, defendant's wall was the only front-yard fence or wall standing in the subdivision in violation of the covenant in issue.
The record also reveals that, in addition to side-yard fences built by the developer, "several" other side-yard fences for "end unit homes" had been constructed. These other fences violated the covenant and the evidence shows that plaintiff had not requested their removal but had stated, in a letter from its Architectural Control Committee, that no action would be taken against owners of "harmonizing" side-yard fences.
The trial court ruled that from an aesthetic standpoint defendant's wall improved the appearance of the premises. He reasoned that because plaintiff had permitted side-yard fences violative of the covenant and had declared that "harmonizing" side-yard fences did not detract from the appearance of neighborhood, it had waived the covenant as to side fences. The chancellor then held that aesthetically pleasing front-yard fences or walls could not be prohibited because both front and side structures were specifically controlled by the same covenant. Accordingly, the court below decided that the covenant as to front-yard fences or walls had been "legally waived or abandoned" and "it would be inequitable" to enforce such covenant "against any person within [its] common design and purpose".
Although the Association assigns four errors, the dominant issue is whether, under these facts, the defendant has proved that plaintiff waived the covenant as it applies to front-yard fences or walls.
While denying that it has abandoned the side-yard restriction and arguing that the "aesthetic nature of a prohibited improvement has no probative value" upon the issue here presented, the Association contends that by its failure to take action against "harmonizing" side-yard fences, it has not thereby waived its right to prohibit front-yard fences or walls. The defendant, on the other hand, adopting the trial court's reasoning, maintains that she has carried her burden of proof and shown that such waiver has occurred. We do not agree with the defendant.
Elementary is the proposition that the right to enforce a restrictive covenant of this type may be lost by waiver, abandonment or acquiescence in violations thereof. See generally 7 Thompson on Real Property | 3173 (1962 repl. vol.). But the party relying on such waiver must show that the previous conduct or violations had affected "the architectural scheme and general landscaping of the area so as to render the enforcement of the restriction of no substantial value to the property owners." Romig Modest, 102 Ohio App. 225, 229, 142 N.E.2d 555, 559 (1956); see Deitrick Leadbetter, 175 Va. 170, 176, 8 S.E.2d 276, 279 (1940).
Not disputing the correctness of the foregoing statement of law, defendant contends that "the general purpose of the covenant lapsed with the abandonment by the Plaintiff of the original purpose of the [developer]".
To determine whether defendant has shown that no substantial value was left in this restriction, we look first to its purpose and then to the conduct of plaintiff as it affected the neighborhood. As set forth in the recorded "Declaration of Covenants, Conditions and Restrictions", the purpose was to enhance and protect "the value, desirability and attractiveness of the real property" in Village Gate. A review of the record, including photographs of the subdivision, shows that the neighborhood in question was composed of individual residential buildings, each containing as many as ten two-story row dwellings separated by party walls. Only the owners of the end units, of course, had side yards (the defendant's unit was not on an end), but each unit had a front yard. Considerable open space, spotted with trees and shrubbery, appears from the photographs to exist between buildings, and at the end of each building, to which the side fences were affixed. Obviously, an effort was made to create a rural setting in this populated development. All of the side-yard fences shown in the photographs are of one type and apparently conform to the style specified by the Architectural Control Committee, that is, "alternate board fences of the type originated by the builder".
We are of opinion that the evidence fails to show that the "attractiveness" of the neighborhood was affected adversely by construction of the side fences. And the chancellor did not make a finding to the contrary; he merely stated that these fences "clearly have an impact upon the appearance of the neighborhood." Furthermore, there is no evidence to show that the "value" or "desirability" of the property was influenced adversely by such fences. Consequently, the plaintiff's conduct in specifically authorizing construction of "harmonizing" side fences has not affected the architectural scheme and general landscaping of the area so as to render the enforcement of the restriction as to "nonharmonizing" side fences of no substantial value to the property owners, and now waiver has occurred.
There having been no waiver of the covenant as to side fences because the general scheme of development has not been altered, it necessarily follows that, as to that branch of defendant's argument, there has been no waiver of the front fence or wall restriction.
But the defendant contends that construction of this attractive front-yard wall must be approved because side fences and front walls are "linked irrevocably [in the covenant] by the clear and unmodified conjunction 'or'." The defendant maintains that because the Association has approved the construction of "harmonizing" side fences, it would be inequiable to allow the Association to refuse to approve construction of "harmonizing" front walls. We do not agree.
The developer's architectural scheme or general plan included side fences, but there is no evidence it included front fences or walls. By refusing to approve the front wall, regardless of its desirability, the Association has acted properly to preserve the general plan in accordance with the purposes of the covenants. The effect of permitting front fences or walls, when they were never contemplated by the general scheme of development, would be "to nullify the restrictions and to make a contract different from the one made by the parties." Traylor Holloway, 206 Va. 257, 260, 142 S.E.2d 521, 523 (1965). Therefore, as long as the value of the covenant has not been affected substantially, the plaintiff will not be deemed to have waived the right to enforce the front fence or wall provision. And the approval of attractive side fences, consistent with the general plan, does not estop the plaintiff from disapproving desirable front fences or walls.
Accordingly, the decree appealed from will be reversed and the cause remanded to the trial court with direction to issue an order requiring defendant to forthwith remove the wall from her lot.
Reversed and remanded.