## CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Sam H. Wallace, Jr.,
and Margaret L. Wallace

v.

Frederick Hoggard
and Sandra L. Hoggard

January 21, 2005

Case No. (Chancery) CH04-459

BY JUDGE DEAN W. SWORD, JR.

This matter is before the court on a petition filed by the Wallaces seeking injunctive relief against the Hoggards for violation of certain mutual restrictive covenants that apply to residential real estate owned by each party.

For the reasons stated herein the court is of the opinion that the relief requested should be granted.

*Facts*

The evidence establishes that the Wallaces own a parcel of real estate, which is their home, briefly known as Lot 23 on the "plat of Lamper Place, Plat No. 2." This parcel was conveyed to the Wallaces by deed of Chesley K. Lamb et ux. dated July 24, 1962, and is of record in this court in Deed Book 395 at page 27.

Likewise, the Hoggards own an adjacent parcel, also their home, known as Lot 24 on the "plat of Lamper Place, Plat No. 2." This parcel was also conveyed by Chesley K. Lamb et ux. by deed dated April 9, 1962, and is of record in this court in Deed Book 387 at page 282. (Copies of each deed are complainant's Exhibits 3 and 1 respectively.)

Each deed contains "conditions and restrictions" which *inter alia* provide:

> 2. No building shall be erected on the property hereby conveyed nearer than 30 feet to the front lot lines, nor nearer than 15 feet to any side lot line. The sideline restriction shall not apply to a garage located on the rear one-quarter of the lot hereby conveyed.

Further evidence discloses that the Hoggards decided to construct a garage on the rear of their property and sought a permit from the City of Portsmouth Building Official. As the Hoggards quickly learned, the permit process was very complex due to certain "wetlands" regulations that were imposed in 1988. (Both parcels are located upon navigable tidal waters known as the Western Branch of the Elizabeth River, which is a tributary of the Chesapeake Bay.)

Complexity not withstanding, the Hoggards ultimately secured their building permit and as of the end of June 2004 had completed the garage.

The evidence establishes that the garage is six feet from the coterminal property line and is not located within the "rear one-quarter" of the Hoggard property.

Hoggard presented testimony that he was unable to build the garage any further towards the rear of his property. (See Title 10.1, Chapter 21 of the Code of Virginia and Chapter 9.1 of the Code of the City of Portsmouth, 1988, as amended.) Defendant's Exhibit A, a site plan prepared by Hoggard/Eure Associates, P.C., and certified by Franklin A. Halton, P.E., for the firm, shows the required set back from the water or wetlands being fifty feet and the actual depth of the lot being approximately 200 feet. (See further discussion as to how the court reached this conclusion.)

## Questions for Decision

A. *The initial matter to be decided is whether the restrictive covenant is valid and enforceable.*

The general rules are well summarized in *Barris v. Keswick Homes, L.L.C.,* 268 Va. 67 (2004), and may be stated as follows:

(1) "Restrictive covenants on land are not favored and must be strictly construed." *Id.* at p. 71;

(2) "Substantial doubt or ambiguity is to be resolved against the restriction and in favor of the free use of the property." *Id.* at p. 71;

(3) "When the terms are clear and unambiguous, the language used will be taken in ordinary signification, and the plain meaning will be ascribed to it." *Id.* at p. 71;

(4) "Generally, a restrictive covenant cannot be modified or terminated except by agreement of all of the parties entitled to enforce the covenant." *Id.* at p. 71.

We have already quoted the covenant in question and an ordinary reading of the language contained in the covenant would not convey ambiguity. Fifteen feet is fifteen feet and the boundary line is easily determined. The rear one-quarter of the lot would require a simple mathematical computation and voila, we have our answer. However, there is one potentially complicating factor as to what land the Hoggards hold title. Their deed refers to lot 24 and give its dimensions as 80 x 300 x 80 x 282. An examination of Exhibit A and Exhibit 2 reveals the lot lines being extended into the Western Branch of the Elizabeth River roughly 100 feet on the northern boundary and roughly seventy feet on the southern boundary. A question then arises as to whether this extension into the river should be considered as a part of the lot to determine the rear one-quarter. More significantly the real question is whether the Hoggards have any claim of ownership (beyond riparian rights) to this parcel that is essentially the bottom of a tidal estuary.

The law of title to submerged land is a complicated issue. The generally accepted proposition is "that property beyond the low water mark belongs to the state within whose territory it lies 'subject to any lawful grants of that soil by . . . the sovereign power which governed its territory before the Declaration of Independence'." *Commonwealth v. Morgan,* 225 Va. 517, 523 (1983) (internal cites omitted).

While the facts of *Morgan* are inapposite to our case, there is no evidence of the Hoggards or their predecessors in title having received a lawful grant of the subject river bottom. When this is linked with the legal principal that adverse possession does not run against the state (see *Bunting v. City of Danville,* 93 Va. 200, 209 (1896)), the court comes to the conclusion that the rear one-quarter of the lot begins at the edge of the water as shown on Exhibit A. The court comes to the further conclusion that this does not create an ambiguity that would lead to the covenant being unenforceable. In fact, such a conclusion operates in favor of the defendant and allows for the use of the land that is not submerged.

B. *Has the covenant been violated?*

Clearly, the garage is closer to the side lot line than fifteen feet, and the Hoggards concede it is only six feet from the boundary with the Wallaces. Exhibit A also shows that the rear fifty feet of the Hoggard property constitutes a wetlands buffer zone as required by the city code. This same fifty feet measured from the edge of the water (and thus the lot owned by Hoggard) towards the street constitutes the rear one-quarter of the lot.

Applying a plain meaning reading of the covenant, we can only come to the conclusion that the garage is in violation.

C. *Does the "buffer" create a change of circumstances to render the restriction unenforceable?*

The defendants quite correctly argue that, before the adoption of the various statutes, *supra,* beginning in 1988 there would have been no prohibition upon the use of the rear fifty feet of the lot now designated as a buffer. Based upon these now applicable rules, they further posit that the restriction should be held invalid because the local ordinance prohibits construction in what is the rear one-quarter of the lot.

Each side has cited a number of Virginia cases in support of their position (interestingly the same cases), that are factually inapposite.

Two cases are somewhat similar to our matter, and the court finds them persuasive.

*Marks v. Wingfield,* 229 Va. 573, 576 (1985), observes:

> The record discloses only one change of condition . . . since the restrictions were imposed. That change resulted from the County's adoption of an ordinance, as a protection against flood damage, which regulated the elevation of structures . . . in the subdivision. However, this did not radically change the residential character of the neighborhood.
> The court reached this conclusion after noting the rule ["When a party seeks to defeat enforcement of the ground of change in the neighborhood, he must prove that conditions in the whole neighborhood have changed so radically as to virtually destroy the essential purposes and objectives of the agreement."].

*Marks* at p. 576.

The case of *River Heights Assocs. v. Batten*, 267 Va. 262 (2004), explored whether a restrictive covenant limiting the use of the property to residential development was unenforceable as to several lots that were rezoned by the county for commercial use only. Faced with the obvious result that the economic value of the lot would be reduced to open space usage the court observed:

> What is required . . . is a leveling exercise in which fair consideration is given both to conditions in the subdivision and those in the surrounding area. Here the facts are that there have been no changes within Carrsbrook Subdivision . . . but there have been substantial changes in the surrounding area. After giving fair consideration to both situations, we are of the opinion the changes are not so radical as to defeat the purpose of the covenant.

*Id.* at p. 275.

The covenant in our case was designed to keep outbuildings from being placed upon the lots except in certain places. The effect of the ordinance creating the buffer limits further where such structures may be built. However, the evidence (see Exhibit A) discloses that the subject structure could have been constructed without violating the restriction. The court is therefore unable to come to the conclusion that the ordinance establishing the buffer creates such a radical change as to void the restriction. Stated another way, these defendants had adequate space to build their garage without violating the covenant and the enforcement of the covenant may not be defeated simply because the defendant elected not to comply when they easily could have.

D. *Should an injunction be denied?*

The defendants argue that, notwithstanding the violation, they should not be required to move the garage and the plaintiff should only be allowed to seek damages at law.

The plaintiffs cite *Traylor v. Holloway*, 206 Va. 257 (1965), in support of their request for an injunction.

> If parties for valuable consideration, with their eyes open, contract that a particular thing shall not be done, all that a court of equity has to do is say by way of injunction that which the parties have already said by way of covenant, that the thing shall not be done, and in such case the injunction does nothing more than give the

sanction of the process of the court to that which already is the contract between the parties. It is not, then, a question of convenience or inconvenience, or of the amount of damage or injury – it is the specific performance, by the court, of that negative bargain which the parties have made, with their eyes open, between themselves.

*Id.*, 111 Va. at 182, 68 S.E. at 251.

Here, the defendants knowingly and deliberately violated the covenant with the knowledge that the plaintiffs absolutely objected. In keeping with *Traylor*, the court can only conclude that the appropriate remedy is to order the building to be made to conform to the restriction.