# CIRCUIT COURT OF ARLINGTON COUNTY

Alfred Dysart et al.

v.

Sunnyside Development, L.L.C., et al.

April 4, 2007

Case No. (Civil) 06-999

BY JUDGE JOANNE F. ALPER

This matter comes before the Court following a bench trial held on March 6 and 7, 2007, on Plaintiffs' complaint and Defendant Sunnyside's counterclaims. Having taken the matter under advisement and reviewed the evidence, memoranda, and arguments of counsel, the Court concludes that the language of the restrictive covenant is not ambiguous and, under the plain meaning of the word "story," the two houses in question are two-story dwellings, and therefore do not violate the restrictive covenant. The Court further finds that Defendant's counterclaim against Plaintiffs Dysart, Schaeffer, and Banks is barred by the doctrine of laches. Therefore, Plaintiffs' claim is denied and Defendant Sunnyside's counterclaim is denied.

## I. *Factual and Procedural Background*

The Plaintiffs Alfred and Carole Dysart, Julian Pollack, Richard and Wendy Rahm, Eric Schaeffer, David and Kathryn Banks and Defendant Sunnyside Development, L.L.C., are all owners of property in the Lacey

Forest subdivision of Arlington County, Virginia. Defendant SunTrust Bank which financed the construction of Defendant's two houses was a nominal party and participated in the trial in support of Defendant Sunnyside. The Lacey Forest subdivision was created through a land grant in 1941 by B. M. Smith which contained numerous restrictive covenants covering the parcels of land in the subdivision. There is no dispute that this covenant, recorded by B. M. Smith among the land records of Arlington County, binds each parcel in the subdivision. Each Lacey Forest landowner has knowledge of the covenant and has the right to enforce violations of the covenant.

On October 26, 2005, Defendant purchased two parcels of real estate in the Lacey Forest subdivision, 1144 N. Ivanhoe Street and 1146 N. Ivanhoe Street. Defendant, through its owner David Springberg, demolished the existing structure that sat on both lots and built two individual houses upon the parcels. The houses are similar in style, with both built into the side of a sloping hill. The hill slopes from left to right when viewing the houses from the front and slopes from back to the front. The result of this topography is that both houses appear from the front to be three levels, with drive out garages facing the street, but from the back the houses appear to be two levels with the yard sloping from the back left corner. The Plaintiffs filed suit on July 14, 2006, alleging that these two structures are in violation of the height restrictions of the restrictive covenant.

A bench trial was held on March 6-7, 2007. Following trial, all parties were given the opportunity to file post-trials brief and Plaintiffs were permitted to file a reply brief.

Plaintiffs objected to SunTrust filing additional evidence not introduced at trial attached to their Post-Trial Brief and objected to SunTrust filing a Sur-reply to explain the introduction of additional evidence. Both objections are granted. The additional evidence submitted by SunTrust and SunTrust's Sur-reply were not examined or considered in determination of this opinion.

## II. *Plaintiffs' Claim to Enforce the Restrictive Covenant*

The issue before this Court is both simple and complex: what is the definition of "story" as used in the 1941 restrictive covenant? In relevant part, the restrictive covenant states:

> All lots in this subdivision shall be restricted to residential purposes. No structure shall be erected, altered, placed, or permitted to remain on any residential building plot other than one

> detached single-family dwelling, *not to exceed two and one-half stories in height*, and a private garage for not more than two cars.

Plaintiffs' Exhibit 1, Restriction ¶ 1 (emphasis added).

Under Virginia law, restrictive covenants are construed following the "plain meaning" rule of contract interpretation, unless the court determines that the term is ambiguous. *Waynesboro Village, L.L.C. v. BMC Properties*, 255 Va. 75, 79-80 (1998). However, "valid covenants restricting the free use of land, although widely used, are not favored and must be strictly construed and the burden is on the party seeking to enforce them to demonstrate that they are applicable to the acts of which he complains." *Id.* at 80. Any substantial doubt or ambiguity is to be resolved against the restrictions in favor of the free use of property. *Id.*

When reviewing the covenant, the Court is mindful that "the function of the court is to construe the contract made by the parties, not to make a contract for them." *Doswell, L.P. v. VEPCO*, 251 Va. 215, 222 (1996). Extrinsic or parol evidence is irrelevant unless and until the covenant is deemed ambiguous; the Court "is not at liberty to search for its meaning beyond the instrument itself . . . this is because the writing is the repository of the final agreement of the parties." *Waynesboro Village*, 255 Va. at 79-80.

## A. *B. M. Smith's 1941 Covenant*

Terms in covenants are given their "plain meaning," unless the term is ambiguous. *Waynesboro Village*, 255 Va. at 79-80. Terms are ambiguous when there are two or more meanings for the same term or the term can be understood in more than one way. *Id.* at 80.

Plaintiffs argue that the terms of the restrictive covenant are unambiguous, but suggest that this Court is permitted to consider evidence regarding terms that are common in trade usage. *See Rosenberg v. Turner*, 124 Va. 769, 775 (1919). This Court is inclined to agree with this statement of the law.

After careful review of the evidence and the covenant, the Court finds that the covenant is unambiguous. The plain meaning of the term "story" is all levels above the basement. As defined by the *Dictionary of Building Preservation* and not disputed at trial, the term "ground level" refers to the main living level at or slightly above grade. On these properties, where the topography includes a significant slope from the back left corner, the ground level must be the highest point of the property where the house is located, otherwise the first level would, at points, be below grade.

Furthermore, since the covenant is unambiguous, the Court "is not at liberty" to examine extrinsic or parol evidence presented by either side. *Waynesboro Village*, 255 Va. at 79-80.

In this case, the Defendant's houses are two-story dwellings with partially .exposed basements containing garages. These structures do not violate the restrictive covenant. This interpretation of these terms is supported by both a review of the language of the entire covenant, definitions of these terms used during the period, and other residences found in the neighborhood that are bound by the same covenant.

## B. *Comparison of Terms in the Covenant*

B. M. Smith clearly limited the structures in the neighborhood to single-family dwellings, not to exceed two and one-half stories in height, with only a two car garage. Plaintiffs' Exhibit 1, Restriction ¶ 1. The question is what constitutes a "story" under the covenant. A review of the covenant demonstrates that, not only were basements known in houses built in 1941, they were specifically contemplated in the covenant and would not count as a "story."

First, the covenant contemplates the existence of basements by prohibiting use of a "trailer, *basement*, tent, shack, garage, barn, or other outbuilding erected in the tract" used as a "residence temporarily or permanently." *Id.* at Restriction ¶ 7 (emphasis added). Second, the covenant states:

> The ground floor area of the main structure, exclusive of one-story open porches and garages, shall be not less than 700 square feet in the case of a one-story structure, nor less than 500 square feet in the case of a one-and-one-half, two, or two-and-a-half story structure.

*Id.* at Restriction ¶ 8.

Therefore, a structure with no floors above the ground floor is a one-story building. Reading these two provisions together as a whole, the Court finds that a structure with a ground floor and no level above would be a one-story building, even if it were to have a basement below ground level.

In this case, Defendant's two houses have a ground floor, which is level with the backyard grade and one story above it. While the lower level is clearly visible from the street, it sits below the backyard grade and is below ground in .the back of the building. Therefore, these lower levels are basements, which are below the first counted floor and, therefore, not a "story" contemplated by the terms of the covenant.

## C. *Relevance of Dictionary of Building Preservation*

Even when a covenant is unambiguous and its terms have a plain meaning, the court may review the usage of that term in the context of a trade without violating the parol evidence rule, because "custom is deemed to be a part of the contract." *Rosenberg*, 124 Va. at 775.

The covenant contains three terms that are at issue in this litigation: (1) "story," (2) "ground floor," and (3) "basement." All the parties have introduced and relied upon the definitions found in the *Dictionary of Building Preservation* to help define certain residential building terms as they would have been used in 1941, including "ground floor" and "basement." While the Court does not find these definitions dispositive of the issue, the meanings support the Court's conclusion.

According to the *Dictionary of Building Preservation*, a "basement" is "a story or stories of a building below the main level, at or partly below grade" and "ground floor" is "the floor or story of a building located at, or slightly above, the adjoining grade; implies all of the construction up to the floor above, excluding the basement or cellar." Plaintiffs' Exhibit 4, Defendant's Exhibit 16.

The Plaintiffs argue that the Court should consider the definition of "cellar" that requires that such a structure be at least one-half below grade. However, this definition and the testimony of Plaintiff's expert Kenneth Britz concerning the depth of Defendant's houses are not relevant because the term "cellar" is not used in the covenant.

The Court finds that the lower levels of both Defendant's houses are at or partly below grade given the topography of the property and the ground floor, while quite high as viewed from the front, is the middle level directly above the garage, which is at or slightly above the adjoining grade and is therefore the first "story." Neither the covenant nor the plain meaning of basement appear to require that a level below the ground floor should be counted as a "story."

Plaintiffs argue that the definition of basement states that it is a story and therefore, even if these lower levels are basements, these dwellings are three-story buildings. The Court finds this argument unpersuasive. While the Court is willing to use the definitions in the *Dictionary of Building Preservation* to help define what a basement is, the Court is unwilling to defer to the *Dictionary* its determination of whether such a level is a story under this covenant.

D. *Comparison with Other Residences in the Neighborhood*

One purpose of restrictive covenants is to assure uniformity of appearance in a residential subdivision. A review of other houses in the subdivision from photographs and other evidence at trial reveals that the Defendant's houses are, in fact, very similar to houses built on Jefferson Street and Washington Boulevard, and fundamentally similar to houses on Ivanhoe Street.

This neighborhood's topography is marked by steep increases and decreases in elevation. Curtis Miller Testimony, March 7, 2007, Trans. at p. 20, lines 6-12. Therefore the ground floor viewed from one angle may be completely different than from another viewpoint. The two houses at issue may appear to be three stories from the front, but this is only because the highest part of the property's grade is in the backyard and slopes forward. Defendant's Exhibit 2. The house at 5538 Washington Boulevard, located at the corner of Ivanhoe Street and Washington Boulevard, has a similar appearance, though the yard seems to slope mainly from left to right. Plaintiffs' Exhibit 3A, SunTrust Exhibit 1. Two houses, 5539 11th Street North and 5535 11th Street North, built around 2002 also appear to be more than the two and one half stories from the front because the backyards slope toward the street. Plaintiffs' Exhibit 3A.

Other houses appear to be two stories from the front, but when viewed from the back, there are three levels clearly visible. Among these are the houses located at 1106 North Jefferson Street, 1118 North Jefferson Street, 1112 North Jefferson Street, 1124 North Jefferson Street, 1130 North Jefferson Street, and 1148 North Jefferson Street. Defendant's Exhibit 2. In fact, one of the Plaintiffs in this case, Eric Schaeffer, owns a house at 1150 North Ivanhoe Street (next door to Defendant's houses), which appears to be only two stories from the front, but three stories when viewed from the back. Defendant's Exhibit 2; Plaintiffs' Exhibit 3A. Mr. Schaeffer testified that he has a basement with a door that opens to the backyard patio. Eric Schaeffer Testimony, March 6, 2007, Trans. at p. 47, lines 8-11.

Each of Defendant's houses has a lower level that the Court finds is a basement. It does not matter for the definition of a basement whether the basement is exposed in the front, back, or side of the structure. The ground floors each correspond with the highest grade touching the building. The covenant remains intact as the houses throughout the subdivision maintain the same uniformity and general look regarding their height.

E. *Applicability of 1938 and 1942 Arlington County Zoning Ordinance*

The Plaintiffs argue that, while the restrictive covenant is unambiguous, the language of the covenant incorporates definitions found in the Arlington County Zoning Ordinance that existed at the time of the creation of the covenant. Under the Plaintiffs' reading of the covenant and the applicable Arlington County Zoning Ordinances, Defendant's lower level garage constitutes the first story of a three-story building.

Plaintiffs urge the Court to review the Arlington County Zoning Ordinance for a better understanding of the term "story" arguing that it is not parol evidence, but rather additional terms and restrictions explicitly incorporated into the covenant. The preamble to the restrictive covenant states, in relevant part:

> This subdivision is made with free consent and desire of the said B. M. Smith, the owner and proprietor of said land, and is *made in accordance with the laws of the Commonwealth of Virginia, and the regulations of the County of Arlington, Virginia, relating to subdivision of real estate.*

Plaintiffs' Exhibit 1, Preamble (emphasis added).

Plaintiffs argue that, since this covenant was "made in accordance" with these specific laws and regulations, the terms and restrictions are a part of the covenant. Specifically, the Plaintiffs refer to the term "story" used by the Arlington County Zoning Ordinance, which is defined as:

> The vertical distance of a building included between the surface of any floor and the surface of the next floor above it, or, if there be no floor about it, then the space between such floor and the ceiling next above it, *provided that a cellar shall not be considered a story.*

1938 Arlington County Zoning Ordinance, SunTrust's Exhibit 2 (emphasis added); *see also* 1942 Arlington County Zoning Ordinance, Plaintiffs' Exhibit 2.

The term "cellar," while not defined in the either the 1938 or 1942 Arlington County Zoning Ordinance, is defined by the *Dictionary of Building Preservation* as "[t]he part of a building enclosed by the foundation walls with more than one-half of its height below grade." Plaintiffs' Exhibit 4. Plaintiffs introduced an expert in the field of architecture, Kenneth Britz, who testified that he took measurements of the percentage above grade of the lower level of

both Defendant's buildings and found them to both be greater than one half above grade. Kenneth Britz Testimony, March 6, 2007, Trans. at p. 24, lines 4-9. Therefore, in this expert's opinion, the lower level of Defendant's houses were stories making these houses three story buildings. *Id.* at p. 20, line 4.

The Court finds that the language in the preamble does not incorporate the Arlington County Zoning Ordinance, but rather states that this covenant was created *in accordance with* the laws of Virginia and Arlington County's subdivision regulations. To the extent that the covenant refers to specific regulations, the plain meaning of the statement indicates compliance with the *subdivision* regulations of Arlington County and makes no reference to the *zoning* ordinance. Therefore, how the term "story" was defined by the County Board of Arlington in 1941 is as much parol evidence as any contemporaneously drafted covenant not involving this parcel of land. So long as the terms in the covenant are unambiguous, this evidence and the conclusions drawn from it are irrelevant to the Court's decision.

E. *Defendant's Defenses of Waiver, Abandonment, Estoppel, Unclean Hands, and Laches*

Defendant Sunnyside argues that, through the inaction of Plaintiffs and other home owners in this subdivision, the covenant provision regarding the "story" limitation on the properties has been waived or abandoned, Plaintiffs should be estopped from pursuing this claim, and that Plaintiffs' actions, unclean hands, and inaction, laches, bars these claims. Since the two houses in question have been found not to violate the restrictive covenant, the Court does not reach these defenses.

III. *Defendant Sunnyside's Counterclaim for Enforcement of the Restrictive Covenant*

Defendant Sunnyside filed a counterclaim where it alleged that Plaintiffs Dysart, Schaeffer, and Banks were themselves in violation of different provisions of the restrictive covenant. Defendant Sunnyside in its post-trial brief concedes that it has not presented enough evidence to support claims against Mr. Schaeffer and has not proved that Mr. and Ms. Banks' garage is presently being used as a residence. Defendant, however, persists in its allegations that Plaintiffs Dysart's and Banks' properties are too close to the property lines.

Equity follows the law with respect to statutes of limitations for courts in equity, therefore "if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." *Sanford v. Simms*, 192 Va. 644, 649 (1951). The Court finds that Defendant Sunnyside has failed to present any evidence to overcome the equitable defense of laches for any of these allegations. Unrefuted testimony given at trial indicates that the structures in question presently owned by Plaintiffs Dysart, Schaeffer, and Banks were built over forty years ago. Julian Pollack Testimony, March 6, 2007, p. 35, lines 4-18 (Dysarts' and Bankses' houses existed in 1964); Eric Schaeffer's Testimony, March 6, 2007, p. 38, lines 21-22 (house built in 1965).

Plaintiffs argue that the two year catch-all statute of limitations, under Va. Code § 8.01-248, should apply. However, any statute of limitations would have run over the last forty years. Therefore, even if these structures are technically in violation of the restrictive covenant, the Defendant lost the right to make this challenge long before he bought the property as a result of the inaction of his predecessors in interest. Therefore, Defendant Sunnyside's counterclaim is denied.

## IV. *Conclusion*

The Court rules, based upon the plain meaning of the covenant and evidence at trial, that Defendant's houses do not violate the two-and-one-half story restriction of the covenant, and, therefore, Plaintiffs' claim is denied. Furthermore, the Court rules that Defendant's counterclaims are barred by the doctrine of laches and its claim is also denied.