## Norris J. Williams, et al.

### v.

## Jimmie W. Brooks, et al.

Record No. 871051

September 22, 1989

Present: All the Justices

*Norris F. Rick (Nancy L. Lowndes; Thompson & McMullen,* on briefs), for appellants.
*R. Bruce Long* for appellees.

Chief Justice Carrico delivered the opinion of the Court.

This case involves a restrictive covenant which purports to prohibit mobile homes in Belroi Farms Subdivision in Gloucester County. The covenant in question reads as follows:

No structure of a temporary character, that is, a trailer, basement, tent, shack, garage, barn, or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently if it can be seen from any adjoining lot or from the road(s) adjoining said lot except that a trailer may be occupied on a temporary basis by the owner of a lot during construction of a residence on said lot provided that said residence is constructed in a reasonable amount of time.

On August 18, 1986, the complainants, Jimmie W. Brooks and Glenita Sue Brooks and several other owners of lots in Belroi Farms,[1] filed a bill of complaint against the defendants, Cathy J. Cauble, owner of Lot 13 in the subdivision, and Norris J. Williams and Carol J. Williams, owners of Lot 24.[2] The bill alleged that the defendants had obtained county permits for the installation of double-wide mobile homes on their lots and that they had installed such homes and occupied them continuously since the date of installation. The bill also alleged that each mobile home could be seen from its adjoining lots and roads. The bill prayed for a mandatory injunction requiring the defendants to remove the mobile homes.

The trial court heard the matter ore tenus and held that "the defendants' homes are . . . trailers as defined in the restrictive covenants" and that the complainants "are entitled to the relief prayed for." The court "perpetually enjoined and restrained [the defendants] from occupying or using [the trailers] at any time as . . . residence[s]." We granted the defendants this appeal.

The evidence shows that Cauble's home measures 28' x 60', that the Williamses' home measures 24' x 64', and that each home is located on a five-acre lot. Each structure has had its hitch, wheels, and springs removed and is supported by permanent

---

[1] The other complainants are Gene E. Cash and Dorothy M. Cash, William W. Legg, Jr., and Lois Ann Legg, Edward M. Radwanski and Barbara A. Radwanski, and Paul J. Sullivan and Shari A. Sullivan.

[2] Janice M. Barber, owner of Lot 19 in Belroi Farms, was also a defendant below, but she did not seek an appeal.

piers resting upon concrete footings. Each is finished off with brick foundation/skirting walls. Cauble's structure has decks in the front and rear while the Williamses' house has brick steps in the front and a deck in the rear. Cauble's house without the lot is valued at $55,000 and the Williamses' at $50,000. Cauble's house and lot are financed together by a Veterans Administration loan for $79,000.

The defendants argue that the covenant in question "is so ambiguous that the trial court erred in enforcing it." "[E]ssentially ambiguous," the defendants say, is "the term 'structure of a temporary character,'" and the ambiguity is compounded by use of the words, "that is," immediately following "structure of a temporary character."

The complainants argue, on the other hand, that the covenant is "clear, precise, and enforceable." They maintain that the paragraph unquestionably prohibits all trailers as residences, "if they can be seen from any adjoining lot or road, except on a temporary basis during construction of a residence."

The issue in the case, the complainants say, is whether the defendants' structures are trailers; "[i]f they are trailers, then they are prohibited." The complainants assert that the defendants have admitted the structures are mobile homes, "[s]o the issue, reduced to its most finite posture, is whether or not a trailer and a mobile home are one [and] the same."

The two terms, "trailers" and "mobile homes," the complainants aver, "are regularly used by Courts interchangeably." The complainants cite numerous cases from across the country, constituting what they say is a "long held majority view that '[c]alling a trailer a "mobile home" does not make it any less a "trailer".'"

We have no quarrel with the cases cited by the complainants and are willing to assume for purposes of discussion that the terms "trailer" and "mobile home" are synonymous. That does not end the matter, however, because the word "trailer" is not used in isolation in the restrictive covenant under review, and the question remains whether the covenant, when considered in its entirety, is ambiguous.

The restrictive covenants involved in the cases cited by the complainants typically read: "No structure of a temporary character, trailer, basement, tent, shack, garage, barn or other outbuilding shall be used on any lot at any time as a residence either temporarily or permanently." *See, e.g., Van Poole* v. *Messer*, 19 N.C.

App. 70, 70-71, 198 S.E.2d 106, 107 (1973). In the instances cited by the complainants, structures of a temporary character constitute a category separate from trailers, basements, tents, shacks, garages, barns, or other outbuildings.

■ In none of the cases cited by the complainants has the phrase "[n]o structure of a temporary character" been followed by the words "that is," as found in the restriction involved in this case. Use of the words "that is" eliminates from Paragraph 6 structures of a temporary character as a separate category and also causes the term, "structure of a temporary character," to become the modifier of the words "trailer, basement, tent, shack, garage, barn, or other outbuilding."

The complainants say that the language used in the restriction "clearly defines a trailer as a structure of a temporary character," with the result that all trailers or mobile homes, whether of a temporary or permanent character, are excluded from Belroi Farms Subdivision. That is certainly an acceptable interpretation. An equally acceptable interpretation, however, is that only trailers or mobile homes of a temporary character are excluded and not those which, as here, are permanent in the sense that they are affixed to the realty and possess most, if not all, of the amenities one usually associates with an ordinary home. In any event, the language involved in this case creates an ambiguity, one raising serious questions about what structures are permissible and what are not.

■ A similar situation was presented in a case noted and distinguished in the *Van Poole* decision from North Carolina, cited by the complainants and referred to *supra*. In *Hullett* v. *Grayson*, 265 N.C. 453, 144 S.E.2d 206 (1965), a restrictive covenant provided that "[n]o temporary building, garage, garage apartment or trailer shall be erected [on any lot] for temporary or permanent use." *Id.*, 144 S.E.2d at 206-07. The plaintiffs sought to require the removal of a building which had been erected by the defendants and which was "of permanent, rather than temporary, construction and [was] for use as a garage." *Id.*, 144 S.E.2d at 207.

The plaintiffs in *Hullett* contended that the adjective "temporary," immediately preceding the noun "building" in the restrictive covenant, modified "building" but not "garage," "garage apartment," or "trailer" and that "the restriction prohibit[ed] the erection of a separate detached garage, temporary or permanent." *Id.* On the other hand, the defendants contended that the adjec-

tive "temporary" modified not only "building" but also "garage," "garage apartment," and "trailer" and that the covenant did not "prevent the erection of a detached garage of permanent construction." *Id.* at 453-54, 144 S.E.2d at 207. The trial court denied injunctive relief and dismissed the plaintiffs' suit. *Id.* at 454, 144 S.E.2d at 207.

The Supreme Court of North Carolina affirmed, stating:

> The restriction is ambiguous and its language is susceptible of various conflicting interpretations . . . . Restrictive covenants are not favored and are to be strictly construed against limitation on use. In the absence of clear and unequivocal expressions, restrictive covenants are not to be expanded and all doubts are to be resolved in favor of the free use of the property . . . . The restriction in question is of such doubtful meaning that the [trial] court, in the exercise of its equity jurisdiction, could not in good conscience grant the relief sought in this action.

*Id.* (citation omitted).

This language is equally applicable here. Accordingly, we will reverse the judgment appealed from, dissolve the injunction entered by the trial court, and dismiss the bill of complaint filed by the complainants.

*Reversed and dismissed.*