12 F.3d 205
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
In re: SIDNEY'S INCORPORATED, Debtor.
Sidney's Incorporated, Plaintiff-Appellant,
v.
Contractors-Builders-Services Corporation; -Richard
McGimsey; Rachel McGimsey; Jane Sarver,
Defendants-Appellees.
 No. 93-1416.
 United States Court of Appeals, Fourth Circuit.
 Argued October 27, 1993.
Decided December 14, 1993.
 
 1
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke.
 
 
 2
 Frank Kenneth Friedman, Woods, Rogers & Hazlegrove, for appellant.
 
 
 3
 William J. Creech, Jr., Gentry, Locke, Rakes & Moore, for appellees.
 
 
 4
 Daniel F. Layman, Jr., Fishwick, Jones & Glenn, for appellant.
 
 
 5
 Eugene E. Derryberry, Gentry, Locke, Rakes & Moore, for appellees.
 
 
 6
 W.D.Va.
 
 
 7
 AFFIRMED.
 
 
 8
 Before RUSSELL and WILLIAMS, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 PER CURIAM
 OPINION
 
 9
 In this appeal we must determine whether the United States District Court for the Western District of Virginia properly read a restrictive covenant to bar the construction of a road on the property at issue in this litigation. Because we agree with the district court that the restrictive covenant unambiguously precludes the construction of a road on the property, we affirm the district court.
 
 
 10
 * The restrictive covenant at issue in this litigation affects a single, undeveloped lot, Lot 1, Block P, Prospect Hills, ("Undeveloped Lot") located in Roanoke, Virginia. Sidney's Inc. ("Sidney's"), a corporation operating under a confirmed Chapter 11 bankruptcy plan, owns the Undeveloped Lot.
 
 
 11
 Sidney's owns an additional 50.5 acres of undeveloped land adjacent to the Undeveloped Lot ("Adjacent Tract"). The Adjacent Tract lies in a "prestigious" residential area and is zoned single family residential. Sidney's reorganization plan calls for the liquidation of the Adjacent Tract which Sidney's intends to sell for possible residential development. The Adjacent Tract would yield its"highest and best value" if a road were constructed on the Undeveloped Lot to provide access to the Adjacent Tract from Route 220.
 
 
 12
 A restriction recorded in the Undeveloped Lot's deed of title limits the improvements that may be erected on the lot. The deed evidencing the 1979 transfer of the Undeveloped Lot from the Appellee, Contractors-Builders-Services Corporation ("C-B-S"), to Betty Mason, the agent of a Mr. Hamlett, a known apartment developer, contained, in relevant part, the following restriction:
 
 
 13
 This conveyance is made upon the express condition and restriction that the lot conveyed hereby, may be improved only by construction of a single family residence and no apartment house may be erected thereon.
 
 
 14
 The deed did not expressly prohibit the construction of a road on the Undeveloped Lot. Ms. Mason then conveyed the Undeveloped Lot to Sidney and Ann Weinstein who, in turn, conveyed it by mesne conveyance to Sidney's in 1980.
 
 
 15
 Sidney's filed a declaratory judgment action in the bankruptcy court seeking to have the court declare that the recorded restriction did not prohibit the construction of an access road across the Undeveloped Lot. The bankruptcy court heard this matter as a non-core proceeding pursuant to 28 U.S.C. Sec. 157(c)(1).
 
 
 16
 After hearing the evidence at trial, the bankruptcy court found that the language of the restriction was not clear on its face because the clause "and no apartment house may be erected thereon" would be rendered meaningless and redundant if the clause"the lot conveyed hereby may be improved only by construction of a single family residence" were read to exclude all construction on the Undeveloped Lot except the construction of a single family residence.
 
 
 17
 In accordance with its belief that the restrictive covenant was ambiguous, the bankruptcy court found it necessary to examine what the parties who created the restrictive covenant intended to achieve. Upon examination, the bankruptcy court found that the parties merely intended to limit the types of buildings which could be constructed on the Undeveloped Lot. Accordingly, the bankruptcy court held that the restriction did not prohibit the construction of an access road on the Undeveloped Lot.
 
 
 18
 The district court reviewed the bankruptcy court's findings of fact and conclusions of law pursuant to 28 U.S.C. Sec. 157(c)(1) and declined to adopt that court's findings. Instead, the district court entered judgment for C-B-S. In its opinion, the court wrote: "[t]he restrictive covenant is not ambiguous. It needs no construction. The property may only be used for the construction of a single-family residence." This appeal followed.
 
 II.
 
 19
 The district court's ruling that the restrictive covenant was unambiguous involves a question of law which we review de novo. Ross v. Craw, 231 Va. 206, 213, 343 S.E.2d 312, 316 (1986); Scarborough v. Ridgeway, 726 F.2d 132, 135 (4th Cir.1984).
 
 
 20
 The parties agree that in Virginia, restrictions on the use of property are not favored and must be strictly construed against the restriction and in favor of the free use of property. See Bauer v. Harn, 223 Va. 31, 39, 286 S.E.2d 192, 196 (1982); Schwartzschild v. Welbourne, 186 Va. 1052, 1058, 45 S.E.2d 152, 155 (1982). In Virginia, those who seek to enforce such covenants must establish that disputed construction is covered by the terms of the covenant. Traylor v. Holloway, 206 Va. 257, 259, 142 S.E.2d 521, 523 (1965).
 
 
 21
 Virginia courts will enforce restrictive covenants where a "grantor has clearly restricted the use of the land granted, and the restriction itself is not illegal ... [citation omitted]." Traylor, 206 Va. at 261, 142 S.E.2d at 523. When construing deeds where the intention of the parties clearly appears according to the words used in their natural meaning, Virginia courts do not invoke rules of construction to defeat that intention. Schultz v. Carter, 135 Va. 730, 734, 151 S.E. 130, 131 (1930); see also Whitehurst v. Burgess, 130 Va. 572, 577, 107 S.E. 630, 638 (1921). Norfolk Motor Ex. v. Grubb, 152 Va. 471, 478, 147 S.E. 214, 216 (1929) ("[i]f it is too plain to misunderstand, there is nothing to construe."). Moreover, it is well settled that "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Globe Co. v. Bank of Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965).
 
 
 22
 On appeal, Sidney's argues that the covenant, which does not explicitly bar the construction of a road, does not clearly and unambiguously prohibit the placement of a road on the Undeveloped Lot. Sidney's contends that the restrictive covenant is ambiguous and may be interpreted in at least two possible ways: (1) as a limitation on the type of dwelling structures that may be built on the lot, or, as the District Court held, (2) as a bar to the construction of anything except a single-family residence on the lot.
 
 
 23
 Sidney's believes that the parties intended the former interpretation of the restriction to govern. Sidney's argues that if the first clause bars the construction of anything except a single-family residence then the second clause prohibiting the construction of an apartment house would be superfluous. Sidney's argues that various rules of construction and interpretation should be applied to interpret the restriction which it believes is ambiguous. Applying these rules of construction, Sidney's concludes that under Virginia law, the application of the ambiguous covenant must be resolved against the restriction and in favor of free use of the Undeveloped Lot.
 
 
 24
 Furthermore, Sidney's contends that interpreting the covenant as a bar to the construction of anything on the lot except a single-family residence would impermissibly expand the restriction. Sidney's suggests that a literal reading of the covenant would prevent a homeowner from constructing a driveway, fence, detached garage, swimming pool or tennis court on the Undeveloped Lot.
 
 
 25
 C-B-S agrees with the district court that the language of the restrictive covenant is not ambiguous. C-B-S notes that the covenant contains two express restrictions. The first restriction limits use of the Undeveloped Lot to a "single family residence." The second restriction prohibits the construction of an apartment house on the lot. C-B-S contends that these restrictions are not inconsistent with each other and are subject to simple interpretation.
 
 
 26
 The parties' disagreement in this matter boils down to a single question: is the restrictive covenant ambiguous? We conclude that it is not. The covenant clearly states that the Undeveloped Lot may be improved only by the construction of a single-family residence. The addition of the phrase "no apartment house may be erected," does not contradict the earlier prohibition of construction other than a singlefamily residence on the lot and does not render the prohibition against other construction ambiguous. Thus, the district court correctly barred the construction of an access road on the Undeveloped Lot.
 
 
 27
 Sidney's seeks to disregard the covenant's plain meaning, in effect rewriting it to prohibit only the construction of apartment houses on the Undeveloped Lot. In support of its argument, that the restriction does not prevent the building of a road on the property Sidney's relies primarily on two Virginia cases: Williams v. Brooks, 238 Va. 224, 383 S.E.2d 712 (1989), and Raleigh Court Corp. v. Faucett, 140 Va. 126, 124 S.E. 433 (1929).
 
 
 28
 In Williams, the Virginia Supreme Court considered whether the following covenant, in relevant part, was ambiguous:
 
 
 29
 No structure of a temporary character, that is a trailer, basement, tent shack, garage or barn, or other outbuilding shall be used on any lot at any time as a residence either temporary or permanently ...
 
 
 30
 The Court found that the language "no structure of a temporary character" followed by "that is" was ambiguous, and subject to at least two conflicting interpretations: (1) all trailers or mobile homes, either temporary or permanent, are excluded or (2) trailers of a temporary character are excluded while permanent trailers are permitted. Because the language was ambiguous concerning which structures were prohibited and, in keeping with the rule that restrictive covenants are strictly construed, the Court held that a mobile home was permitted on the property.
 
 
 31
 The present case differs from Williams. In Williams, the addition of the phrase "that is" removed structures of a temporary character as a separate category and caused the term "structure of a temporary character" to become the modifier of the words"trailer, basement, tent, shack, garage, barn, or other outbuilding." Here, the additional restriction barring construction of apartment houses does not alter the prohibition on construction of anything but a single family residence.
 
 
 32
 Sidney's also relies on Raleigh Court, a case involving a damages action brought by a plaintiff whose property had been damaged when the defendant opened and graded an adjoining street. Neither the parties nor the court focussed on the interpretation of the restrictive covenant in that case. However, in dicta, the Virginia Supreme Court held that "restrictions ... indicating the property was to be used for residential purposes, did not estop the defendants from using one of the lots as a public street." Raleigh Court, 140 Va at 142, 124 S.E. at 437.
 
 
 33
 The Raleigh Court restriction required that the property be used for residential purposes. In the present case, the language of the restriction is more specific--the property may only be used to construct a single family residence. Although Raleigh Court discussed a restriction barring the construction of a road on a piece of property, that decision is not binding on the present case where the language of the restrictive covenant is more restrictive.
 
 
 34
 Finally, Sidney's argues that if the covenant is read to bar the construction of a road it also bars the construction of amenities such as a swimming pool, driveway or tennis courts on the Undeveloped Lot. We disagree, for it is reasonable to read the covenant as not prohibiting the construction of these types of improvements which are appurtenant to single-family residences. Thus, construction appurtenant to a single family residence would not violate the restrictive covenant while construction of an access road would.
 
 III.
 
 35
 We conclude that the restrictive covenant is not ambiguous. The covenant clearly prohibits construction on the Undeveloped Lot except a single family residence. Because the restriction is clear, the decision of the district court is
 
 
 36
 AFFIRMED.