Present:  Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and
Carrico[1] and Compton, S.JJ.

RICHARD A. FORSTER

                               OPINION BY
v.  Record No. 021086     JUSTICE LAWRENCE L. KOONTZ, JR.
                             February 28, 2003
JAMES S. HALL, ET AL.

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Keary R. Williams, Judge

In this appeal, we consider whether the chancellor
correctly determined that an implied reciprocal negative
easement prohibits the placement of "mobile homes" on all the
lots of a residential subdivision.  We further consider whether
the chancellor correctly determined that certain structures that
were permanently annexed to the land are not in violation of the
restriction imposed by this easement.

BACKGROUND

On August 25, 1978, Goose Creek Partnership (the
partnership), of which Carl Cartwright, Jr., was a member,
acquired a tract of land in Tazewell County.  The partnership
had the land surveyed and platted as a residential subdivision
to be known as "Goose Creek Estates," separating it into five
contiguous sections with a total of 113 lots.  The plats of

---

[1] Chief Justice Carrico presided and participated in the
hearing and decision of this case prior to the effective date of
his retirement on January 31, 2003.

sections 1, 2, and 3 of the subdivision were recorded in the land records of the County on December 29, 1978 and contained no restrictive covenants. The plats of sections 4 and 5 of the subdivision were recorded in the land records of the County on February 14, 1979 and contained only restrictions regarding approval of sewer and water systems.

Over approximately the next sixteen years, the partnership included in the vast majority of the deeds to lots in Goose Creek Estates sold to the original purchasers a restrictive covenant providing that "no mobile homes, either single or double-wide, may be parked and/or erected on the property."[2] James S. Hall and Joyce S. Hall (the Halls) purchased Lot 3, Section 4 of Goose Creek Estates on March 9, 1994, from the partnership. The Halls' deed contained the restrictive covenant against parking or erecting mobile homes on their property.

Richard A. Forster (Forster) purchased Lot 5, Section 1 of Goose Creek Estates in March 1996 from Thomas E. Kelley and Angela A. Kelley, who had acquired the lot from the partnership in a deed that contained the restrictive covenant against parking or erecting mobile homes on the property. Forster also

_____

[2] The language expressing the restrictive covenant was not identical in every deed; however, the slight variance of language is not material to our determination of the issues raised in this appeal.

acquired Lot 35, Section 1 in June 1996 during the partnership's attempt to auction the remaining lots of the subdivision.[3] Forster's deed for this lot did not contain the restriction against mobile homes, but the restriction was subsequently added by a recorded deed of correction. Similar corrective deeds were recorded for other lots conveyed pursuant to the auction.

On May 30, 1996, prior to the auction, the Halls also purchased Lot 2, Section 4 of Goose Creek Estates. At their request, the restriction against mobile homes was not included in the deed for this lot. On October 31, 1996, David Wayne McKinney and Eva Sue McKinney (the McKinneys) purchased Lot 1, Section 4 of the subdivision. At their request, the restriction against mobile homes was not included in their deed for this lot.

In 1997, the Halls permitted their son to move his "double-wide manufactured" home onto Lot 2, Section 4 in Goose Creek Estates. In 1998, the Halls also permitted their daughter to move her "double-wide manufactured" home onto this lot. The homes were placed on brick foundations. Porches were added and the tongues and wheels were removed from both homes. The Halls pay the real estate taxes on these homes.

---

[3] Forster's wife was a co-grantee in the deeds of both lots, but was not a party in the subsequent equitable proceeding from which this appeal arises.

On August 20, 1997, the McKinneys conveyed portions of their property in the subdivision by deeds of gift to their daughters, Stephanie D. Bowling and Margaret E. Brown. Bowling and Brown both moved "double-wide manufactured" homes onto their portions of Lot 1, Section 4. Each home was placed on a cinder block foundation and the tongues and wheels were removed. Bowling and Brown pay the real estate taxes on their homes.

On February 16, 1999, Forster[4] filed a bill of complaint in the Circuit Court of Tazewell County against the Halls, the McKinneys, Bowling, and Brown (hereinafter collectively, the landowners). Forster sought a determination "that Lots 1, 2, and 3 of Section 4, Goose Creek Estates subdivisio[n], each are subject to [an implied reciprocal negative] easement that no mobile home, either single or double-wide, shall be placed on said land at any time," and that this restriction may be enforced by the owner of any lot in the subdivision. Forster requested that the chancellor enter an injunction requiring removal of the four double-wide manufactured homes from Lots 1 and 2, Section 4. The landowners filed answers denying that these particular lots were subject to the implied reciprocal negative easement asserted by Forster.

---

[4] The owners of another lot in Section 1 of Goose Creek Estates joined Forster in the bill of complaint, but they are not parties to this appeal.

4

The chancellor received evidence in accord with the above-recited facts during an ore tenus hearing on November 16, 2000. In addition, relevant to the issues raised in this appeal, Cartwright was called as a witness by Forster and testified at length concerning the partnership's marketing of Goose Creek Estates. According to Cartwright, the subdivision, though platted in five sections, was marketed as a single development. Cartwright testified that in a number of instances the restrictive covenant against mobile homes was not included in the deed to a particular lot at the purchaser's request. However, if no such request was made, the restriction was included in the deed to each lot as a matter of course. As a result, 105 of the 113 lots in the subdivision were conveyed by the partnership with the restrictive covenant. Cartwright explained that the purpose of the restrictive covenant was to "protect" the property of the partnership and the purchasers of individual lots from "mobile homes" and, thus, benefit the partnership and the purchasers.

Cartwright also testified that the intent of the partnership in including the restrictive covenant in the various deeds was to keep the subdivision free of mobile homes with "the tongues sticking out and the wheels hanging down." Continuing, Cartwright testified that the partnership wanted to prevent the placement of the "old style" flat-roofed mobile homes in the

5

subdivision.  By contrast and without objection, he indicated that the partnership had not contemplated barring all "manufactured homes" from the subdivision and that aesthetically the homes at issue now are not of the type contemplated by the partnership when the restriction was imposed on the various lots in the subdivision.

By letter to counsel dated August 14, 2001, the chancellor opined that an implied reciprocal negative easement prohibits the placement of mobile homes on any lot in Goose Creek Estates and that Forster has the equitable right to enforce this easement.  However, the chancellor further opined that the homes placed by the landowners on their lots are not in violation of the restriction imposed by the easement.  In reaching this conclusion, the chancellor first found it persuasive that the homes in question have been annexed to the real property and, in that condition, can only be transferred by deed as real estate rather than by certificate of title as personal property.  See Code § 46.2-653; former Code § 46.1-44 (referenced by the chancellor and effective at time the subdivision was created). While recognizing that the classification of the structures as personal property or real property was not dispositive of the issue whether they are subject to the easement, the chancellor further opined that Cartwright's testimony established that "these structures as they now exist are not the type the common

grantor intended to prohibit with the restrictions contained in the deeds." (Emphasis added.) In contrast, the chancellor noted that "the condition of the structures at the time they were moved onto the properties would have rendered them subject to the restrictions found in the various deeds." (Emphasis added.)

On January 31, 2002, the chancellor entered a final decree, adopting by reference the reasoning of the opinion letter and awarding judgment to the landowners. This appeal followed.

Forster challenges the chancellor's judgment that the structures placed on the landowners' lots are not "mobile homes" within the meaning of the restriction imposed by the implied reciprocal negative easement. By assignment of cross-error, the landowners challenge the chancellor's judgment that their lots are subject to the implied reciprocal negative easement.

DISCUSSION

The standard of review that we apply in this appeal is well established. Under Code § 8.01-680, we will affirm the chancellor's judgment unless it is plainly wrong or without evidence to support it. Willard v. Moneta Building Supply, Inc., 258 Va. 140, 149, 515 S.E.2d 277, 283 (1999); W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 385, 478 S.E.2d 295, 301 (1996). Moreover, in determining whether the evidence supports that judgment, we consider the evidence in the light

7

most favorable to the prevailing party in the proceedings before the chancellor.  Id.

We first consider whether the chancellor correctly determined that an implied reciprocal negative easement prohibiting the placement of mobile homes was created on any of the lots in Goose Creek Estates.  If so, we consider whether the landowners' lots are subject to that easement even though they had expressly sought to exempt their lots from the burden of any such restriction.

An implied reciprocal negative easement arises "when a common grantor develops land for sale in lots and pursues a course of conduct which indicates an intention to follow a general scheme of development for the benefit of himself and his purchasers and, in numerous conveyances of the lots, imposes substantially uniform restrictions, conditions, and covenants relating to use of the property."  Duvall v. Ford Leasing Development Corp., 220 Va. 36, 41, 255 S.E.2d 470, 472 (1979).  If such a scheme of development is proved, "the grantees acquire by implication an equitable right . . . to enforce similar restrictions against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants."  Minner v. City of Lynchburg, 204 Va. 180, 188, 129 S.E.2d 673, 679 (1963).  (Emphasis added.)

8

Here, the record is clear that the partnership that developed Goose Creek Estates conveyed 93% of the lots in that subdivision by deeds that contained "substantially uniform restrictions, conditions, and covenants relating to use of the property." Moreover, Cartwright's testimony establishes that this general scheme of development was employed to enhance the marketability of the lots in the subdivision and was for the benefit of the partnership and the purchasers of the lots in the subdivision, such as Forster.

While it is true that the partnership, the common grantor, acquiesced in requests from a small number of purchasers to omit the restriction from their deeds, there is no evidence that this was done with the concurrence of the other lot owners. Moreover, the fact the landowners made such requests with regard to the deeds for their lots is conclusive proof that they had actual notice of the restriction in deeds to other lots in the subdivision. Thus, the landowners were at least constructively on notice that the restriction could burden the use of their lots by way of an implied reciprocal negative easement, even though the restriction was omitted from their deeds. Minner, 204 Va. at 190, 129 S.E.2d at 680. Accordingly, we hold that the chancellor correctly determined that all the lots in Goose Creek Estates are subject to an implied restriction against

9

parking or erecting mobile homes thereon, and that Forster is entitled to enforce that restriction.

We now turn to the issue whether the evidence established that the structures placed on their lots by the landowners are in violation of the restriction against "mobile homes" imposed by the implied reciprocal negative easement. As with any restrictions of the free use of land, which are disfavored by public policy and must be strictly construed, Mid-State Equipment Co. v. Bell, 217 Va. 133, 140, 225 S.E.2d 877, 884 (1976), the person claiming the benefit of an implied reciprocal negative easement has the burden to prove its applicability to the acts of which he complains. Riordan v. Hale, 215 Va. 638, 641, 212 S.E.2d 65, 67 (1975). Thus, Forster had the burden of proving that the structures placed by the landowners on their lots were not in accord with the restriction imposed by the common grantor in this case.

As noted above, the language of the restrictive covenant as it appears in the various deeds, provides that "no mobile homes, either single or double-wide, may be parked and/or erected on the property." Our consideration of the covenant and its application to the evidence in this case ordinarily would be guided by several well-settled principles. When the language in a deed is clear, unambiguous, and explicit, a court called upon to construe such language should look no further than the four

corners of the deed itself.  Irby v. Roberts, 256 Va. 324, 329, 504 S.E.2d 841, 843 (1998).  In such cases, parol evidence of "'the circumstances at the time of [the deed's] creation' is not to be considered in giving effect to the clear, unambiguous, and explicit language of the deed."  Hoffman Family, L.L.C. v. Mill Two Associates Partnership, 259 Va. 685, 695, 529 S.E.2d 318, 324 (2000) (quoting Daugherty v. Diment, 238 Va. 520, 525, 385 S.E.2d 572, 574 (1989)).

We do not find any ambiguity or lack of clarity in the language of the restrictive covenant in question.  However, while not expressly finding that this language was ambiguous, the chancellor considered Cartwright's testimony to determine the meaning of "mobile homes" as contemplated by the developers of the subdivision.  That evidence was admitted without objection.  Accordingly, although it does not carry the weight of a stipulation, we also will consider the evidence as presented to the chancellor without objection in construing the meaning of the language of the restrictive covenant.  See Bauer v. Harn, 223 Va. 31, 36, 286 S.E.2d 192, 194 (1982).

At the time the first deeds for lots in Goose Creek Estates were executed, the term "mobile home" was defined by statute as "a building constructed on a chassis for towing to the point of use and designed to be used as a dwelling; or two or more such units separately towable, but designed to be joined together at

11

the point of use to form a single dwelling and which is designed

for removal to and installation or erection on other sites."

1975 Acts, ch. 535 (enacting Code § 55-248.41).[5]  Here, it is not

disputed that the structures in question were built on chassis

so that they could be towed to their points of intended use and,

thus, fall within the ambit of the definition of a "mobile

home."  Indeed, the chancellor found that these structures, at

the time they were moved onto the landowners' lots, were in

violation of the restrictive covenant for that reason.

Cartwright's testimony does not contradict that conclusion.

Rather, his testimony, taken in the light most favorable to the

landowners, is that once these structures were annexed to the

land they were no longer the type of mobile homes contemplated

by the language of the restriction.  The chancellor agreed and,

thus, found that these structures "as they now exist" do not

violate the restriction.  We disagree.

The chancellor's finding in this regard is not one of fact

but of law.  The chancellor's finding is not binding on this

---

[5] Subsequent amendments to Code § 55-248.41 modified this definition, but did not alter the basic description of the structure as one constructed on a permanent chassis for the purpose of being towed to its point of intended use.  Effective January 1, 1990, the term "mobile home" was changed to "manufactured home" in Code § 55-248.41 and in other definitional statutes, see, e.g., Code § 46.2-100.  For purposes of this appeal, we treat the terms mobile home and manufactured home as synonymous.

Court because we are provided with the same opportunity as the chancellor to consider the language of the restriction in question. See Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984); see also Christopher Assocs. v. Sessoms, 245 Va. 18, 22, 425 S.E.2d 795, 797 (1993). There is no language in the restriction which permits a structure that is otherwise a mobile home to be transformed, by placing it on a foundation and removing its tongue and wheels, so that it no longer may be considered a mobile home within the meaning of the restriction. Moreover, the words "parked and/or erected" negate any distinction between mobile homes that are temporarily parked on the lots and those that are placed on permanent foundations. In short, the structures placed on their lots by the landowners were mobile homes when originally placed there, and they remain mobile homes within the meaning of the restrictive covenant as written by the developers of the subdivision. Cartwright's testimony, in this regard, alters the language of the restriction and would create a distinction in the type of mobile home prohibited where no such distinction was created by the language used in the restriction.

We recognize that in Williams v. Brooks, 238 Va. 224, 227, 383 S.E.2d 712, 713 (1989), we drew a distinction between "mobile homes of a temporary character . . . and . . . those which, as here, are permanent in the sense that they are affixed

13

to the realty and possess most, if not all, of the amenities one usually associates with an ordinary home." However, in Williams the restrictive covenant used the term "trailer" rather than "mobile home," and, while accepting the premise that the two terms were synonymous, we based our holding upon a further provision of the restrictive covenant which limited its application to "structure[s] of a temporary character." Id. There is no such limiting language in the restrictive covenant from which the implied reciprocal negative easement arises in this case. Accordingly, we hold the structures on the lots at issue here are "mobile homes" within the meaning of the implied reciprocal negative easement, and the chancellor erred in finding that Forster has not sustained his burden of proving the right to enforce that easement.

CONCLUSION

For these reasons, we will affirm the chancellor's judgment that all the lots of Goose Creek Estates are subject to an implied reciprocal negative easement prohibiting the parking or erecting of "mobile homes, either single or double-wide" on any lot, reverse the chancellor's judgment that the structures in question are not in violation of the restriction contained in that easement, and remand this case to the chancellor for entry of a decree directing the landowners to remove the mobile homes from their respective properties.

14

<u>Affirmed in part,
reversed in part,
and remanded</u>.