Present: All the Justices

WILLIAM M. BARNER, ET AL.

                                        OPINION BY
v.  Record No. 022710          JUSTICE LAWRENCE L. KOONTZ, JR.
                                     September 12, 2003
EDWARD A. CHAPPELL, ET AL.


        FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG
                     AND COUNTY OF JAMES CITY
                   Samuel T. Powell, III, Judge


     In this appeal, we consider whether the chancellor

correctly determined that a restrictive covenant prohibiting the

building of a house, garage, or other structure on a lot in a

residential subdivision is enforceable by one or more

neighboring landowners.  We further consider whether the

chancellor correctly determined, in the alternative, that the

restriction is enforceable by the neighboring landowners as an

equitable servitude.

                              BACKGROUND

     Beginning in 1922, John Garland Pollard, who would

subsequently serve as the Mayor of the City of Williamsburg and

Governor of Virginia, acquired property in the City of

Williamsburg and James City County along what was then known as

Texas Avenue.  Between 1924 and 1938, Governor Pollard

subdivided and sold portions of that property for use in the

construction of single-family homes.  A recorded plat of a

portion of Governor Pollard's property dated May 30, 1930

reflects the subdivision of the property at that time.[1]  A short, dead-end road, subsequently designated "Ballard Lane," extending from Texas Avenue allowed access to the parcels designated on the plat as Lots 7, 7A, B, E, and F.  A U-shaped road connecting to Texas Avenue at two points, subsequently referred to in some deeds as "Hairpin Road," allowed access to the parcels designated on the plat as Lots A, B, C, D, 7, 8, and 9.[2]  In addition, another parcel, bounded by Texas Avenue and the interior curve of Hairpin Road, was designated as a "park." Along the outer curve of Hairpin Road between Lot 9 and Texas Avenue there was a large undivided parcel that was not given a number or letter designation.  At the time the plat was prepared, Lots A, B, and 9 had already been conveyed.  Over the next two years, Governor Pollard conveyed the remaining designated parcels, with the exception of Lot 7 where he maintained his residence.

The park, which remains undeveloped to this day, contains a natural, wooded ravine.  The deeds conveying the lots designated as A, B, C, D, E, F, and 9 from Governor Pollard to the original

---

[1] See the attached copy of the 1930 plat.

[2] The U-shaped road was subsequently designated "Pollard Park," which also became the common designation for the neighborhood.  For clarity, we will refer to the road as "Hairpin Road" and the neighborhood as "Pollard Park" in this opinion.

grantees contain provisions requiring that the park be maintained perpetually for the mutual benefit of the owners of lots in Pollard Park. Additionally, provisions in these deeds limit development on the respective lots to single-family residences, and impose other construction restrictions such as twenty-foot setback lines and specified building sites. The deeds expressly state that these restrictions shall run with the land.

In 1932, Mary W. Craighill (Craighill) was the record owner of Lot A which is adjacent to Lot 8. By a deed dated December 3, 1932 and recorded on June 20, 1935, Governor Pollard conveyed Lot 8, a parcel containing less than one-tenth of an acre located at the midpoint of the outer curve of Hairpin Road, to Craighill (the Pollard/Craighill deed). This deed provides that "[t]he property hereby conveyed is to be used in connection with [Lot A] and no house, garage or structure of any kind shall be erected thereon."[3] This deed further provides that the restriction shall run with the land "forever." The Pollard/Craighill deed is the only deed relating to the

_____

[3] On January 29, 1937, Craighill conveyed her interest in Lot A to a third party. She again became the owner of Lot A by 1951. No evidence was produced that the severance of title of Lot A and Lot 8 constituted a breach of this provision of the deed, transforming the restriction into a personal covenant that expired upon the death of Governor Pollard.

conveyance of lots in Pollard Park that restricts all construction.

At the time of the conveyance of Lot 8 to Craighill, Governor Pollard had previously conveyed all the other lots designated on the 1930 plat by either numbers or letters with the exception of Lot 7, where he continued to reside. Governor Pollard, however, retained ownership of the undivided parcel located on Hairpin Road between Lot 9 and Texas Avenue. On January 16, 1937, Governor Pollard conveyed a portion of this parcel to Marion P. Morecock. The deed conveying this property contained the same restrictions concerning use of the property for residential purposes and preservation of the park as the deeds conveying the other Pollard Park lots prior to the conveyance of Lot 8. Through a series of subsequent conveyances, Eugene R. and Maureen B. Tracy (the Tracys) acquired this property on July 1, 1985.

Following Governor Pollard's death in 1937, the remainder of the previously undivided parcel was subdivided into two lots which were conveyed in 1938 by the executors of Governor Pollard's estate to the predecessors-in-title respectively of Lloyd A. Julien, Jr. and Sarah B. Julien (the Juliens) and Pat C. Fulmer and Robert M. Fulmer (the Fulmers). The original deed in the Juliens' chain of title contained restrictions similar to those in the deeds conveying lots in Pollard Park prior to

4

Governor Pollard's death; the original deed in the Fulmers' chain of title did not contain these restrictions, although it did reference the 1930 plat.  On August 5, 1941, the executors conveyed Lot 7 to the predecessor-in-title of Genevieve T. Barrett and Jack C. Barrett (the Barretts).  The original deed in the Barretts' chain of title contained restrictions similar to those in the deeds conveying other lots in Pollard Park prior to Governor Pollard's death.

By recorded deed dated August 5, 1998, William Maxwell Barner, III and Sandra E. Barner (the Barners) became the owners of Lot 8.[4]  Because they failed to conduct a title examination, the Barners did not have actual notice of the Lot 8 building restriction originating from the Pollard/Craighill deed.  However, the Barners do not dispute that the restriction was discoverable within their chain of title and, thus, that they had record notice of this restriction.  Soon after acquiring Lot 8, the Barners made preparations to construct a single-family residence upon this lot.[5]

---

[4] The Barners are also the record owners of Lot A where they currently reside.

[5] To build this home, the Barners needed a variance because of certain setback requirements in the Williamsburg Zoning Ordinance.  On November 3, 1998, the Board of Zoning Appeals for the City of Williamsburg granted the requested variance for Lot 8.  An appeal of that decision is pending in the trial court until the resolution of this appeal.

On August 26, 1999, the Tracys, the Juliens, the Fulmers, Edward A. Chappell, Susan S. Geary, William T. Geary, Elizabeth A. Rutgers, Marcia T. Smith, Victor H. Smith, and Joseph S. Wheeler (collectively, the neighboring landowners), who were at that time residents and record owners of lots in Pollard Park, filed a bill of complaint seeking to enforce the restriction in the Pollard/Craighill deed.[6]  The bill of complaint alleged that the construction of a residence on Lot 8 would violate this covenant and, therefore, requested that the Barners be permanently enjoined from building a residence thereon. Although the bill of complaint did not state the precise theory under which all the neighboring landowners asserted that they were entitled to enforce the covenant, it subsequently developed that the majority of these parties, who trace their ownership of lots in Pollard Park to deeds that predated the Pollard/Craighill deed, were relying upon the theory that the restrictive covenant represented an equitable servitude intended to benefit all the lots in Pollard Park.

---

[6] The current record owner of Lot 7, Genevieve Barrett, also joined in the bill of complaint, but was granted a nonsuit early in the proceedings below.  Two other lot owners who initially joined in the suit have subsequently sold their respective properties, although they have not formally withdrawn from the suit.  However, the parties remaining in the suit with a current interest in the litigation are sufficient to allow us to consider all the issues raised in this appeal.

During an ore tenus hearing held September 27, 2001, the parties presented conflicting evidence on the purpose of the covenant. The Barners' expert witness testified that, in 1932, the City of Williamsburg had a sewage disposal problem and that Governor Pollard supported a drainage plan which would run a new sewer line through Lot 8. The Barners contended that the building restriction on Lot 8 was intended solely to prevent any structures from obstructing the proposed sewer line. Because the Barners were willing to reroute the existing sewer line around the footprint of their proposed residence, they asserted that the covenant was no longer needed for its intended purpose and, thus, had lapsed.

On cross-examination, the Barners' expert testified that Lot 8 was naturally a part of the ravine in the center of Pollard Park prior to the construction of Hairpin Road. Additionally, he testified that Governor Pollard could have chosen to place the sewer line along the edge of Lot 8 instead of permitting the sewer line to bisect this lot so that no dwelling could be built on it. The neighboring landowners contended that this indicates that facilitation of the proposed sewer plan was not Governor Pollard's primary purpose in creating the building restriction on Lot 8. Rather, they contended that Governor Pollard's intention, as demonstrated by the building restrictions in all the deeds conveying lots in

7

Pollard Park, was to preserve the natural, green character of the subdivision.

In a final decree dated August 21, 2002, the chancellor, based on the evidence and a view of Pollard Park, found that Governor Pollard intended to preserve Lot 8 as an open, green space and that the purpose of the covenant, therefore, had not lapsed. The chancellor further found that there was sufficient vertical privity between at least one of the neighboring landowners and Governor Pollard and that the restrictive covenant in the Pollard/Craighill deed met all other requirements for a covenant running with the land. Thus, the chancellor determined that this covenant could be enforced against the Barners. The chancellor also expressly found, in the alternative, that the restriction was enforceable by all the neighboring landowners as an equitable servitude. Based upon these findings, the chancellor permanently enjoined the Barners and their successors from building a house, garage, or structure of any kind on Lot 8. We awarded the Barners this appeal.

## DISCUSSION

Under well established principles of appellate review, we will affirm the chancellor's judgment unless it is plainly wrong or without evidence to support it. Code § 8.01-680. Moreover, we consider the evidence in the light most favorable to the parties who prevailed in the proceedings before the chancellor.

8

*Willard v. Moneta Building Supply, Inc.*, 258 Va. 140, 149, 515 S.E.2d 277, 283 (1999).

We first consider whether the chancellor correctly determined that the restrictive covenant in the Pollard/Craighill deed originally conveying Lot 8 in Pollard Park is enforceable by at least one of the neighboring landowners. A restrictive covenant is enforceable if a landowner establishes: (1) horizontal privity; (2) vertical privity; (3) intent for the restriction to run with the land; (4) that the restriction touches and concerns the land; and (5) that the covenant is in writing. *Waynesboro Village, L.L.C. v. BMC Properties*, 255 Va. 75, 81, 496 S.E.2d 64, 68 (1998); *Sloan v. Johnson*, 254 Va. 271, 276, 491 S.E.2d 725, 728 (1997). The parties agree that the only requirement at issue in this appeal is whether any of the neighboring landowners can establish vertical privity to enforce the restrictive covenant. In addition, the Barners contend that the chancellor erred in failing to find that the purpose of the restrictive covenant has lapsed.

Vertical privity exists when there is privity between the original parties and their successors-in-interest. *Id.* More precisely, vertical privity requires that the benefit of a restrictive covenant extend only to "one who succeeds to some interest of the beneficiary in the land respecting the use of

9

which the promise was made."  Old Dominion Iron & Steel Corp. v. Virginia Electric & Power Co., 215 Va. 658, 663, 212 S.E.2d 715, 719-20 (1975) (citing Restatement of Property § 547 (1944)).  In the present case, the neighboring landowners who trace their ownership of property in Pollard Park through chains of title to conveyances from Governor Pollard that pre-date the Pollard/Craighill deed have not established the necessary vertical privity.  This is so because the interests of their predecessors pre-date the creation of the covenant in the Pollard/Craighill deed and, thus, they did not succeed "to some interest of the beneficiary" of the covenant.[7]  These landowners are Edward A. Chappell, Susan S. Geary, William T. Geary, Elizabeth A. Rutgers, Marcia T. Smith, Victor H. Smith, and Joseph S. Wheeler.

By contrast, the Tracys, the Juliens, and the Fulmers trace their ownership of property in Pollard Park to original grantees in deeds executed after the execution of the Pollard/Craighill deed and, thus, meet the requirements for vertical privity

---

[7] We recognize that the beneficiary of an express covenant in a deed may not always be limited to the grantor.  Here, however, there was no express intention to extend the benefit of the covenant directly to third parties.  The absence of such an express extension of the benefit of the covenant does not, however, preclude the possibility that third parties may claim the benefit as an equitable servitude, as will be discussed infra.

10

because they can trace their interests directly to Governor Pollard, the beneficiary of the restrictive covenant contained in that deed.

There is no merit to the Barners' contention that the Tracys, the Juliens, and the Fulmers do not have the necessary vertical privity because their lots were originally a part of the previously undivided parcel between Lot 9 and Texas Avenue as shown on the 1930 plat. The mere fact that this parcel was not given a specific number or letter designation on this plat is of no significance and does not preclude the conclusion that Governor Pollard intended for this parcel also to benefit from the restriction imposed upon Lot 8. No evidence in the record suggests that Governor Pollard intended only Lot 7, upon which he maintained his residence, to benefit from the restriction he placed upon Lot 8.

Once a restrictive covenant has been established, the party asserting that the restriction is unenforceable because changed conditions have defeated the purpose of the restriction has the burden of proving that the purpose of the restriction no longer exists. Conditions must have changed so substantially that the essential purpose of the covenant is defeated. Smith v. Chesterfield Meadows Shopping Center Associates, L.P., 259 Va. 82, 84, 523 S.E.2d 834, 835 (2000); Booker v. Old Dominion Land Co., 188 Va. 143, 148, 49 S.E.2d 314, 317 (1948). The only

11

evidence presented by the Barners regarding this issue was that Governor Pollard supported a plan to run a sewer line through Lot 8, the plan would not have worked without the sewer line in that approximate location, and currently the sewer line can be relocated on Lot 8 so as not to prevent the construction of a single-family home upon the lot.

The neighboring landowners, however, presented sufficient evidence to support the chancellor's determination that the purpose of the restrictive covenant was to maintain Lot 8 as an open, green area in Pollard Park. This purpose is consistent with the setback requirements and building restrictions in the various deeds and the provisions that the ravine area be maintained as a park. The evidence that Lot 8 was a natural extension of the ravine prior to the construction of Hairpin Road is also consistent with the determination that the grantor's intent was to maintain Lot 8 as an open, green area. Finally, the chancellor's view of Pollard Park clearly established that the conditions in the neighborhood have not changed so substantially that the purpose of the restrictive covenant has been defeated. Indeed, the evidence shows that Pollard Park remains substantially unchanged. Accordingly, we hold that the chancellor's determination that the restrictive covenant on Lot 8 is enforceable by at least one of the

neighboring landowners is supported by the evidence and not plainly wrong.

Finally, we now address the question whether those landowners who acquired their interests in lots in Pollard Park through chains of title to conveyances from Governor Pollard that pre-date the Pollard/Craighill deed may enforce the restriction contained in that deed as an equitable servitude benefiting their properties.

By definition, an equitable servitude can only arise when a common grantor imposes a common restriction upon land developed for sale in lots. Forster v. Hall, 265 Va. 293, 300, 576 S.E.2d 746, 749-50 (2003) (citing Duvall v. Ford Leasing Development Corp., 220 Va. 36, 41, 255 S.E.2d 470, 472 (1979)). The burden is on the party claiming the benefit of the equitable servitude to show that a common restriction was intended. Minner v. City of Lynchburg, 204 Va. 180, 188, 129 S.E.2d 673, 678 (1963).

The prohibition against erecting a "house, garage or structure of any kind" is not a common restriction on the lots in Pollard Park because only Lot 8 is restricted in that way. Accordingly, we hold that the chancellor erred in determining that this restriction contained in the Pollard/Craighill deed is enforceable as an equitable servitude.

13

CONCLUSION

For these reasons, we will affirm the chancellor's judgment that Lot 8 is burdened by a restrictive covenant that is enforceable by those neighboring landowners who acquired their interests through original grantees in deeds executed after the execution of the Pollard/Craighead deed. In this case, those neighboring landowners are the Tracys, Juliens, and Fulmers. We will reverse the chancellor's judgment that the restrictive covenant is enforceable by the other neighboring landowners as an equitable servitude, and enter final judgment upholding the permanent injunction issued against the Barners.

<u>Affirmed in part,
reversed in part,
and final judgment</u>.

14



COLLEGE OF WILLIAM AND MARY

PARK

15