# CIRCUIT COURT OF BOTETOURT COUNTY

Curtis Simmons, Jr., et al.

v.

On Faith, L.L.C.

December 8, 2005

BY JUDGE HUMES J. FRANKLIN, JR.

After consideration of this matter, it is the judgment of this Court that the restrictive covenants are not enforceable against the tract of land owned by the Respondent, On Faith, L.L.C. The restrictions the Complainants seek to enforce are not within On Faith's chain of title. The restrictive covenants being outside the chain of title, they are not enforceable because horizontal and/or vertical privity is lacking. Additionally, the Complainants do not posses an equitable right to enforce an implied negative reciprocal easement because the prohibition of commercial use of Tract 1 was not part of the common grantor's general plan or scheme. The evidence supporting the restriction is ambiguous and must be resolved in favor of the free use of the land. Therefore, the Court denies all relief sought by the Complainants' Bill of Complaint for Declaratory Judgment, grants the Respondent's Cross-Bill, and declares that Tract 1 is not restricted to residential purposes and the Respondent, is not prohibited from developing Tract 1 for commercial purposes.

I. The restrictive covenants, including the prohibition on commercial use of the property, are not within the chain of title to On Faith's property, the parcel of land designated "Tract 1" on the British Woods subdivision plat.

Property conveyed under a deed of trust which predated the creation of restrictions on that property is not encumbered by those restrictions. *Marbury v. Jones*, 112 Va. 389, 395-96, 71 S.E. 1124, 1127 (1911); *Nagle v. Syer*, 150 Va. 508, 512, 143 S.E. 690, 691 (1928). Although the restrictions in those cases were a mortgage and a lease, respectively, and this case involves a restrictive covenant, the rule followed in those cases applies here. An agreement made between the grantor and a third party "after he has given the deed of trust, [can]not in any way affect the rights of the trustee or his purchaser." *Id.* at 395, 71 S.E. at 1126. Court opinions from other jurisdictions also provide persuasive authority for this proposition. *Carden v. Bush*, 155 S.E. 914, 915 (W. Va. 1930); *Vernon v. Allphin*, 98 So. 2d 280, 284 (La. App. 1957); *St. Louis Union Trust Co. v. Foster*, 190 S.E. 522, 530 (N.C. 1937).

James Long executed a deed of trust in 1972, which granted a lien on the real property in British Woods, including Tract 1. The restrictive covenants were created in 1973. The deed of trust was foreclosed in 1975, and that the property, including Tract 1, was conveyed to First Union National Bank of North Caroline by the foreclosure trustee. On Faith traces its chain of title to the foreclosure trustee.

Applying the precedent cited above, the covenants do not exist in On Faith's chain of title because they were created after the entry of the deed of trust. As in *Marbury*, an agreement between a grantor and a third party after the grantor has given a deed of trust cannot affect the rights of the trustee or those who purchase from the trustee. The trustee and the subsequent owners of Tract 1 never gave consent to the creation of restrictive covenants.

The covenants were not reimposed or reincorporated into the title to Tract 1 by language in subsequent deeds that stated that "this conveyance is made subject however to all easements, restrictions, and covenants of record that effect the property hereinabove described." This phrase serves to qualify and give notice; it does not imply assumption of all previously created restrictions. *S. L. Nusbaum v. Atlantic Virginia Realty Corp.*, 206 Va. 673, 679, 146 S.E.2d 205, 209 (1966). Such language does not impose any new restrictions. See *Taylor v. McConchrie*, 264 Va. 377, 383, 569 S.E.2d 35, 38 (2002).

II. Because the restrictive covenants are not within On Faith's chain of title, they are not enforceable against On Faith. In Virginia, "[a] restrictive covenant is enforceable if a landowner establishes: (1) horizontal privity; (2) vertical privity; (3) intent for the restriction to run with the land; (4) that the restriction touches and concerns the land; and (5) that the covenant is in writing." *Barner v. Chappell*, 266 Va. 277, 283, 585 S.E.2d 590, 594 (2003).

"In order to establish horizontal privity, the party seeking to enforce the real covenant must prove that 'the original covenanting parties [made] their

covenant in connection with the conveyance of an estate in land from one of the parties to the other'." *Sonoma Dev., Inc. v. Miller*, 258 Va. 163, 168, 515 S.E.2d 577, 580 (1999) (quoting *Runyon v. Paley*, 416 S.E.2d 177, 184 (N.C. 1992)). "In other words, the covenant must be part of a transaction that also includes the transfer of an interest in land that is either benefited or burdened by the covenant." *Id.*

The deed in this case was not made "in connection with the conveyance of an estate in land" from one party to another. James Long is the sole signatory of the deed, and the only party who was involved in creating the restriction. Deed No. 73-1603, Deed Book 210, Page 4, of Botetourt County, Virginia (August 27, 1973). These facts fail to meet the requirement that that the covenant be part of a transaction or conveyance.

Although the lack of horizontal privity alone is enough to support the Court's finding that the restrictive covenants are not enforceable, the Court also finds that vertical privity is lacking here. "Vertical privity exists when there is privity between the original parties and their successors-in-interest." *Id.* The parties seeking to enforce a restrictive covenant must trace their title directly to the beneficiary of the restrictive covenant. *Id.*

The title held by Complainants Mr. and Mrs. Chrimes, Lee, and Reynolds is traceable to property which was released from the deed of trust before it was foreclosed. Thus, those Complainants are in privity with the original beneficiaries of the restrictive covenant. However, the titles belonging to the remainder of the Complainants and On Faith trace back to the 1972 deed in trust. There is no privity between On Faith and the original parties to the covenant, and, therefore, vertical privity does not exist here, rendering the covenant unenforceable.

III. As an alternative to their claim seeking to enforce a common law covenant running with the land, the Complainants seek the imposition of a restrictive covenant in equity, known as an equitable easement, equitable servitude, or an implied reciprocal negative easement.

The doctrine of restrictive covenants in equity provides that "an equitable servitude can only arise when a common grantor imposes a common restriction upon land developed for sale in lots." *Barner*, 266 Va. at 285, 585 S.E.2d at 595. The party claiming the benefit of an equitable servitude has the burden of showing that a common restriction was intended. *Id.* at 286, 585 S.E.2d at 595. "The intent of the parties, especially that of the common grantor, determines the existence of the right." *Mid-State Equipment Co. v. Bell*, 217 Va. 133, 141, 225 S.E.2d 877, 884 (1976). If such they meet their burden of showing that a general scheme or plan exists, property owners whose title includes such restrictions "acquire by implication an equitable right . . . to enforce similar restrictions

against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants." *Minner v. City of Lynchburg*, 204 Va. 180, 188, 129 S.E.2d 673, 679 (1963).

Thus, the fact that the restrictive covenants are not in On Faith's chain of title does not prevent the Complainants whose title does include those restrictions, Mr. and Mrs. Chrimes, Lee, and Reynolds, from seeking to enforce an equitable servitude over Tract 1. However, they cannot meet their burden of proving that it was part of the common grantor's general plan or scheme to impose the restrictions created by the 1973 deed on the parcels designated as Tract 1 and Tract 2 on the British Woods plat.

The Court places great weight on the testimony of James E. Long, the common grantor and developer of the British Woods subdivision, that he did not intend to restrict Tract 1 and Tract 2 to residential use. The Court finds credible Long's testimony that his plan was that the majority of the parcels in the British Woods development were to be used for residential purposes but he reserved the two larger parcels at the entrance to the subdivision which fronted the highway to sale for commercial purposes. The fact that he did not restrict the use of Tract 1 and Tract 2 to non-residential purposes is not convincing evidence that Long intended for those parcels to be included in a general scheme encompassing those parcels as well as the lots. As Long testified, he was seeking to keep his options open with regard to the possible commercial development of the Tracts. Likewise, the fact that Tract 2 was eventually used for residential purposes does not show that Long intended the tracts to be used solely for noncommercial purposes, simply that he sought to impose no restrictions or limitations on the use of those parcels.

The Court does not look only to the testimony of the common grantor but also must examine "the words used in the restriction, the plats, the deeds, such surrounding circumstances as the parties are presumed to have considered when their minds met, the purpose to be achieved by the covenant, and the use of the property." *Mid-State Equipment*, 217 Va. at 141, 225 S.E.2d at 884 (citing *Whitehurst v. Burgess*, 130 Va. 572, 577-78, 107 S.E. 630, 632 (1921)).

In considering this evidence, the Court is mindful that "restrictive covenants on land are not favored and must be strictly construed." *Barris v. Keswick Homes, L.L.C.*, 268 Va. 67, 71, 597 S.E.2d 54, 57 (2004). "Substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property." *Anderson v. Lake Arrowhead Civic Ass'n*, 253 Va. 264, 269-70, 483 S.E.2d 209, 212 (1997). When the terms of a restrictive covenant "are clear and unambiguous, the language used will be taken in its ordinary signification, and the plain meaning will be ascribed to it." *Marriott Corp. v.*

*Combined Properties, L.P.*, 239 Va. 506, 512, 391 S.E.2d 313, 316 (1990). The party seeking to enforce a restrictive covenant has the burden of proving that the covenants "are applicable to the acts of which he complains." *Friedberg v. Riverpoint Bldg. Committee*, 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977). "If it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning by definite and necessary implication, then the thing denied may be said to be clearly forbidden." *Id.* (citation omitted).

The restrictive covenants expressly apply to "all lots shown on the [plat of the British Woods Subdivision]." The language of Restriction # 1 provides that "all of the lots in . . . British Woods, as shown on [the] aforementioned plat shall be used for residential purposes only, and not for any commercial purposes." While the Complainants are correct that ordinarily "lot" and "tract" are interchangeable terms, *Black's Law Dictionary* 958 (7th ed. 1999), when the covenant is read together with the plat, it appears that there was an intent to distinguish the lots from the two tracts.

The land owned by On Faith is designated "Tract 1" on the plat. Tract 1 and Tract 2 are the parcels of land on either side of the entrance to British Woods. They front the highway and are considerably larger than the lots which are being now in use as residences. The plat divides the smaller parcels of land into seven "Blocks." Within each of the seven blocks, the lots are numbered, starting with the number one. Parcels that are separated by a street are part of a separate block. Neither Tract 1 nor Tract 2 are designated as being part of any block despite the fact that Tract 1 borders Block 3 and is not separated by a street while Tract 2 likewise borders Block 1. All of the lots which are included in a block have a minimum building or setback line. Neither Tract 1 nor Tract 2 has a minimum building line. Mr. Long testified that he did not to put a minimum building line on those parcels because he did not want to prevent their commercial use, such as by a filling station or convenience store.

These distinctions must be considered because the language of the covenant refers to the lots "shown on the [plat]" or the lots "as shown on [the] aforementioned plat." The language refers to the plat, and the plat distinguishes Tract 1 from the lots. A note on the plat refers to "Lot 4, Block 2." Thus, all of the numbered parcels within the blocks are "lots" despite the fact that the word "lot" is not written next to each number. In contrast, Tract 1 is clearly labeled as a "tract." While each smaller parcel could be referred to as "Lot X, Block Y," Tract 1 is not part of a block. Thus, while the plat implicitly designates each of the smaller parcels as "lots," it expressly distinguishes Tract 1. Mr. Long testified that the covenants' reference to the lots "as shown on [the] aforementioned plat" was worded to save the tracts "to put businesses on."

The Complainants refer the Court to the chart entitled "curve data" on the first page of the plat. Both the lots and the tracts are included in this chart, but, instead of supporting the Complainants' position, the "curve data" chart distinguishes between the tracts and the lots. The lots are referred to by lot and block number under the appropriate columns in this table. The tracts are not given a lot and block number, but, instead, their designation occupies the corresponding row under the lot and block columns. More telling, however, is the fact that the designation "road" also appears under the lot and block columns. The inclusion of the tracts in the "curve data" chart is no more evidence that the residential restriction applies to the tracts than the inclusion of road segments in the chart is evidence that the restrictive covenants such as the minimum square footage or maximum fence height apply to the streets of British the Woods subdivision.

At the very least, these facts show that the meaning of the word "lot" in the covenant is ambiguous. It is not apparent from reading the covenant that "the restrictions carry a certain meaning by definite and necessary implication." *Friedberg*, 218 Va. at 665, 239 S.E.2d at 110. The title page of the plat declares that the plat shows the subdivision of the "tract" of land into "lots." This statement and *Black's Law Dictionary* are not sufficient to prove that the word "lot" as used in the *covenant* definitely and by necessary implication referred to Tract 1 as well as the parcels included in the seven blocks. It is not necessary that "lots" refers to Tract 1 because the covenant still makes sense if "lot" is not meant to refer to Tract 1. The Court also notes that the Complainants' own title examination expert testified that the covenants were ambiguous or "fuzzy."

Because ambiguity and substantial doubt must be resolved in favor of the free use of land, the Court finds that language of the restrictions, the plats, and the deeds are not evidence that the parties intended the restrictive covenants to apply to Tract 1. The surrounding circumstances also do not show that the parties intended or understood the covenants to apply to the tracts. In marketing the lots to buyers, Mr. Long never represented that the covenants included in the deeds to the lots also applied to the tracts. The use of the lots for single-family residences is not inconsistent with the use of the parcels fronting the highway for commercial or business purposes.

Therefore, the Court finds that the parties did not intend to follow a general plan restricting every parcel in the British Woods subdivision to residential purposes. Because the general plan was not to restrict the use of Tract 1 to residential purposes, the Complainants do not have the equitable right to enforce the restrictive covenants against Tract 1, which does not contain those restrictions in its chain of title.

For the foregoing reasons, the Court denies all relief sought by the Complainants' Bill of Complaint for Declaratory Judgment, grants the Respondent's Cross-Bill, and declares that Tract 1 is not restricted to residential purposes and the Respondent is not prohibited from developing Tract 1 for commercial purposes.